## In re ENGELHARDT.

Patent Appeal No. 2753.

Court of Customs and Patent Appeals.
May 28, 1930.

Drury W. Cooper, C. B. Townsend, and H. F. Wiegand, all of New York City, and R. L. Scheffler, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the Patent Office rejecting claims 4 to 8, inclusive, of appellant's application, for want of patentability over the prior art.

Upon oral argument, appellant abandoned claims 4, 5, and 6, leaving only claims 7 and 8 in issue. These claims read as follows:

"7. In a process of separating gases, passing a gaseous mixture into activated carbon and removing the adsorbable portion from said gaseous mixture by the activated carbon while allowing the unadsorbable portion to pass, expelling the adsorbed portion from the activated carbon by introducing steam into the carbon carrying the adsorbed gaseous material, cooling and collecting the gaseous matter thus expelled.

"8. In a process of separating gases, passing a gaseous mixture into activated carbon and removing the adsorbable portion from said gaseous mixture by the activated

carbon while allowing the unadsorbable portion to pass, expelling the adsorbed portion from the activated carbon by introducing steam into the carbon carrying the adsorbed gaseous material, and liquifying the gaseous matter thus expelled with the aid of cooling."

The references cited by the Patent Office are: Dewar (British) 7808 of 1905; Dewar (British) 13638 of 1904.

Said claims sufficiently describe the invention in issue.

The appellant is a chemist, a citizen of Germany. He filed his application in the United States Patent Office on August 11, 1921. On November 4, 1916, his assignee filed an application in Germany for a patent, making the following claim:

"Separation of organic gas or of vaporized organic substances from their mixtures with air or other difficulty—or un-absorbable gases, such as hydrogen, consisting in treating such mixtures with especially porous charcoal, such as can be produced according to the process of Patent No. 290,656, and expelling the organic substances absorbed by the charcoal with the aid of steam in the heat."

It is conceded that the disclosure in said application describes the invention here in issue. Said application was allowed and patent thereon was granted by Germany and published on November 11, 1920, effective from November 4, 1916.

Upon application of appellant to the United States Patent Office, he was given the benefits of the Act of March 3, 1921, known as the Nolan Act (35 USCA §§ 80–87), which gave to him the benefit of the filing date of the said German patent, November 4, 1916.

On July 20, 1921, one Oscar L. Barnebey, an American citizen, filed in the United States Patent Office an application for a patent upon the same invention involved herein, and patent therefor was granted on August 14, 1928, No. 1,680,840. The claims 7 and 8 here in issue were copied from said Barnebey patent for the purpose of an interference proceeding; the said claims being numbered 15 and 20 in said Barnebey patent. Said patent was inadvertently issued, as appellant's application was pending at the date of its issue, and it is conceded that the subject-matter of said claims is disclosed in appellant's application.

Appellant filed with the Commissioner of Patents a petition requesting that the claims here in issue, with the others which have now been abandoned, be entered, and an interference declared between his application and the said patent to Barnebey. Said amendments were finally entered, but the interference petitioned for was denied upon the ground that the claims were unpatentable, and in effect held that the Barnebey patent, inadvertently issued as aforesaid, was invalid. The Board stated that the British references here relied upon were not cited against the Barnebey application.

The appellant contends that from the foregoing state of facts an extraordinary situation is presented which should be considered in passing upon the claims here in issue. That contention may be stated as follows:

That appellant's legally effective filing date of application is November 4, 1916, being the date on which his assignee in Germany filed an application corresponding to the application here involved; that it is not disputed that the disclosure of said German application is the same as the disclosure of appellant's application here in issue; that appellant's application admittedly disclosed the invention defined in the claims copied from the Barnebey patent; that if appellant is permitted to enter an interference contest with Barnebey's patent, appellant will be entitled to his date of filing of the German application, and priority of invention will be awarded to him unless Barnebey is able to prove that he made his invention prior to November 4, 1916, which is almost four years before Barnebey filed his application.

Up to this point appellant's contention presents a situation not unusual in the case of an inadvertent issue of a patent upon a copending application; but appellant further contends in his brief as follows:

"Engelhardt's *German* patent, standing alone, without the grant to him of a United States patent, was not granted or published until too late to defeat the Barnebey patent. Barnebey filed the application for his patent on July 20, 1920, and the Engelhardt German patent was not granted or published until after that date. In the absence of pending (not abandoned) or patented corresponding United States application filed within the provisions of section 4887, Rev. St., 35 USCA § 32 (or as supplemented by the Nolan Act [35 USCA §§ 80–87]) a foreign patent speaks only as of its date of grant or publication and not as of its filing date. Elizabeth v. Pavement Co., 97 U. S. 126, 130, 24 L. Ed. 1000.

"*It is therefore beyond dispute that if the decision of the Patent Office refusing all*

*claims to Engelhardt is made final, no one will ever be able to prove that Engelhardt and not Barnebey was in fact the first inventor."*

In this contention appellant seems to be correct. If his application be rejected, and he is thereby denied an interference with Barnebey, should a suit against him for infringement be brought by Barnebey, and should the court hold the Barnebey patent was not anticipated by the British patents upon which the Board of Appeals relied in rejecting appellant's application, and therefore valid, judgment could be entered against appellant, although he may have been in fact the first inventor and had done everything that the law requires to protect his invention in the United States.

This is so because, with the rejection of appellant's application, there would be nothing pending in the Patent Office, and as conception and reduction to practice of an invention in a foreign country is not a defense to a United States patent, and as the German patent was issued subsequent to Barnebey's application, although applied for four years prior thereto, appellant would have no legal defense to an infringement suit, based upon the fact that he was the first inventor.

Appellant urges that the foregoing warrants us in resolving in his favor all doubts as to patentability of his claims to a greater extent than would be proper under ordinary circumstances.

Of course we must find that the Board of Appeals erred in its decision before we can reverse it. The fact that strong equities may exist in favor of appellant does not justify us in finding error where none exists, but we think it is proper for us to consider these facts in determining the weight to be given to the fact that all of the tribunals of the Patent Office concurred in finding lack of patentability in appellant's claims. We have a right to consider that a patent has been issued by the Patent Office, a patent covering the very claims here in issue, that such patent is beyond recall by it, and that it will be considered in any court as presumptively valid.

Of course the issue of the Barnebey patent did not preclude the Patent Office from finding that the claims here in issue lack patentability. If the Patent Office was clearly wrong in finding patentability of the Barnebey application, it should not repeat its error with regard to the claims here involved, but we think that in such cases lack of patentability should very clearly appear to warrant rejection, and any doubt as to patentability should be more strongly resolved in favor of patentability than under circumstances where a patent had not been previously issued.

With these observations we come to the consideration of the question of patentability of the claims here in issue.

The Board of Appeals held the claims here involved are anticipated by the British patent to Dewar, No. 7808, of 1905, when taken in connection with the earlier British patent to him, No. 13638 of 1904.

In its decision, the Board of Appeals said:

"Furthermore, these claims and also claims 7 and 8 are anticipated by said Dewar patent when taken in connection with the earlier British patent to Dewar, No. 13638, referred to in the later patent. The later patent substitutes an earthy oxide, or a mixture of such oxide with carbon, for the charcoal of the former. It fairly teaches the use of the charcoal of the earlier patent, as well as the earthy oxides to which it is particularly directed, in its disclosed processes.

"The earlier patent discloses pre-conditioning the charcoal by heating it to a red heat (525° to 850° C.) and exhausting it to free it from its naturally contained gas to render it more active in absorbing gases. Barnebey's original disclosure contained his method of preparing activated carbon only by reference to his earlier application, Serial No. 348,901, which has since matured into patent No. 1,660,642. This method as disclosed in the earlier application consists in heating the carbon for an extended period of time at temperatures above 700° C. in the presence of steam. This treatment is comparable to that disclosed by Dewar. Each excludes air and both heat to substantially the same temperature. If Barnebey's carbon be more highly activated than is that of Dewar the difference is merely one of degree. We consider the earlier Dewar patent discloses 'activated carbon' within the meaning of this expression as used in the Barnebey claims of which claims 7 and 8 on appeal are copies. * * *"

The crucial question in the case is whether the earlier Dewar patent, 13638, discloses the use of activated carbon in the process there described. If it does not, it is conceded that neither British patent, singly or in connection with the other, constitutes an anticipation of appellant's claims.

The definition of "activated" given by lexicographers is not especially helpful in

arriving at the meaning of the words "activated carbon."

Funk & Wagnalls New Standard Dictionary defines the word "activate" as follows:

"1. Physics: To render radioactive, as a gas, by subjecting to the action of a radioactive substance; ionize.

"2. Archaic: To make active."

We think it clear that the words "activated carbon," as used in the claims, have a technical meaning in the chemical art, and it must be so considered by us.

Following the decision of the Board of Appeals, from which this appeal is taken, appellant filed a petition for rehearing, which was denied. In support of that petition he filed two affidavits. The first was made by one Dr. Arthur B. Lamb, a professor of chemistry at Harvard University and director of chemistry at said University. He is also editor of the Journal of the American Chemical Society. He also made an earlier affidavit, not necessary to discuss here, but, in the decision appealed from, Dr. Lamb is referred to by the Board of Appeals as "one highly skilled in the art."

In the affidavit filed with this petition for rehearing Dr. Lamb states:

"Dewar, by exhausting, excludes air and thus *excludes the oxygen* contained in it. Steam activation excludes *air*, but it does furnish *oxygen*, because at the temperatures employed steam is an oxidizing agent. It therefore burns some of the carbon and contained impurities to oxides of carbon. The very purpose of using steam is to utilize this *oxidizing* action to activate the carbon. Instead of steam, other oxidizing agents may be and are employed. For instance, carbon dioxide can be used, or even air, at suitable temperatures. In other words, while the Dewar process and the steam activation process appear superficially similar in that both exclude air, this very point of apparent similarity is the substantial point of difference between the two. By reason of his deliberate exclusion of air (which might, if present and properly used, have supplied the required oxygen) Dewar failed to secure a true *activated carbon*. [Last italics ours.]

"Claims 7 and 8 of the Engelhardt application recite a *dynamic* process of gas adsorption in which *activated carbon* is specified as the absorbent material. This process depends for its successful operation upon activated carbon as distinguished from the charcoal prepared according to the Dewar patent. Activated carbon such as can be pre-pared by the zinc chloride process, or by steam activation or equivalent process, and of an activity differing not in degree but in order of magnitude, is essential to the operation of the dynamic process of gas adsorption. With respect to dynamic adsorption the difference between Dewar's charcoal and such activated carbon is not one of mere degree—the two are not even comparable either as to properties or results obtained."

The second affidavit filed with the petition was made by one Walter Duisberg, a consulting chemist practicing his profession in New York City. In this affidavit, Dr. Duisberg states:

"The heating to red heat and exhaustion may serve the purpose of driving off undesired gas already contained in the charcoal, thereby rendering it able to adsorb that much more gas. Cooling the charcoal, as proposed by Dewar, also renders the charcoal capable of adsorbing more gas than it otherwise would. This process of preconditioning proposed by Dewar is not an activation process and does not produce activated carbon. Such preconditioning produces no effective change in physical structure or characteristics. It is erroneous to refer to Dewar's process as an "activation" process. The product produced by activation processes possesses changed physical characteristics and properties from those of either ordinary charcoal or the preconditioned charcoal of Dewar.

"(7) Dewar's charcoal cannot be used in the process defined by the Engelhardt claims here on appeal. This Engelhardt process depends for its operativeness upon the use of *activated carbon* whether prepared by steam activation, by the zinc chloride process, or otherwise."

In its denial of the petition for rehearing, the Board said:

"Appellant petitions for a rehearing upon the question of patentability of the claims rejected to him and particularly claims numbered 7 and 8.

"The petition is accompanied by another affidavit of Dr. Lamb in view of which it is urged that Dewar in British patent No. 13,638 is not using true activated carbon or carbon which may be considered as activated carbon within the meaning of this expression as used in claims 7 and 8. The affidavit states that when steam is used during the heat treatment, as in Barnebey, it acts as an oxidizing agent, whereas, in the Dewar process of preparation, air, and consequently oxygen, is excluded and therefore Dewar does

not obtain activated carbon comparable to that used by Barnebey. It seems obvious that in the Dewar treatment the air cannot be entirely excluded and consequently the charcoal must be activated. Certainly it is rendered more active by the heat treatment and in the subsequent use of the charcoal the patent points out that recently ignited charcoal is employed. The additional affidavit of Druisberg does not change our views. After careful consideration of the petition and accompanying affidavits it does not appear that there is any probability that our decision would be reversed or modified if a rehearing were granted."

The petition is accordingly denied.

Following the denial of the petition for rehearing, appellant filed with the Commissioner of Patents a petition for reconsideration of the rejection of said claims 7 and 8. Said request included an argument in support thereof. This petition was denied on February 21, 1930, in a written decision, again holding that the claims here in issue were anticipated by said Dewar patents.

In the second Dewar patent, No. 7808, earthy oxides are substituted for the charcoal described in the first Dewar patent, No. 13638, as the adsorbent material used. The Primary Examiner, in discussing the relative value of the two kinds of adsorbents, said:

"The claims were not rejected on the Dewar patent per se but on the ground that it involves no invention but only the obvious thing to do to substitute a superior absorbent for an inferior one when the superior adsorbent one is available. All the affidavit shows is that activated carbon is superior to alumina as an adsorbent, *a thing that was conceded from the beginning.*" (Italics ours.)

This naturally raises the inquiry, if the treatment given charcoal described in the first Dewar patent produced activated carbon, why did not Dewar use it in his later patent as the adsorbent material instead of an inferior material? Is there not some implication at least that the reason he did not was because the treatment of charcoal described in the first patent did not result in activated carbon, and hence was not suitable for use in carrying out the process covered by the second Dewar patent?

Standing alone this would not be determinative of the question, but it is a circumstance proper to be considered in connection with the other facts in the case.

We recognize that the questions here involved relate to an abstruse art requiring technical knowledge that can only be acquired through thorough training. We recognize, too, that the Patent Office tribunals possess this technical knowledge, while the members of this court lack it except to a very limited degree.

The record, however, presents a state of facts which we think justifies us in coming to a conclusion contrary to that of the experts of the Patent Office. They may be summarized as follows:

(1) Affidavits of eminent chemists are found in the record positively stating that the treatment accorded charcoal described in the first Dewar patent does not produce activated carbon.

(2) The second Dewar patent did not utilize charcoal treated as described in the first Dewar patent as an adsorbent material, but did use an adsorbent material inferior to activated carbon. This would be explained if activated carbon was not produced by the treatment of charcoal described in the first Dewar patent.

(3) The Patent Office has held these identical claims to be patentable and has issued a patent thereon to Barnebey, which patent is presumptively valid.

(4) The references relied upon by the Board of Appeals are foreign patents, and are to be measured as anticipatory not by what might have been made out of them, but by what is clearly and definitely expressed in them. Carson v. American Smelting & Refining Co. (C. C. A.) 4 F.(2d) 463.

We think that, considering all the facts in the case disclosed by the record, it is clear that the Board of Appeals should have held that the Dewar patent, 13638, did not disclose a treatment of charcoal producing activated carbon or the use of activated carbon, and therefore said Dewar patents, singly or aggregated, neither anticipate nor negative appellant's invention covered by said claims 7 and 8. We hold that failure to so find was error.

No injustice can flow from the conclusion here reached. If, as a result of our action, an interference is declared with the Barnebey patent, and priority should be awarded to him, appellant will be eliminated. If priority should be awarded to appellant, a patent will issue to him and there will then be two patents outstanding upon the same invention. Under section 4918, Rev. St. (35 USCA § 66), the rights of the parties can be fully adjudicated in the federal courts, where ex-

pert witnesses can be produced, subject to cross-examination, and, if the court in·such a proceeding should find that the process in issue is not patentable, both patents will be declared void, as the statute provides in such cases.

The decision of the Board of Appeals is affirmed as to claims 4, 5, and 6, and reversed as to claims 7 and 8.

Modified.