24 C.C.P.A.(Patents)

## In re EITZEN.

### Patent Appeal No. 3706.

Court of Customs and Patent Appeals.

Dec. 21, 1936.

Gustav Drews, of New York City (Hans V. Briesen, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

### GARRETT, Associate Judge.

Appellant's application for patent here involved relates to ink-drying means for stock quotation projecting machines. Several claims stand allowed, but claims numbered 11 and 12 were rejected by an Examiner of the United States Patent Office, whose decision was affirmed by the Board of Appeals. By appeal from the decision of the latter, appellant brings the matter to us for review.

The appealed claims read:

"11. The combination with a ticker adapted to produce inked impressions on a tape prior to its discharge from said ticker, of a heat retaining and tape protecting housing, heating means associated with said housing to dry the inked impressions on the tape during its passage through said housing, and a tape pulling mechanism for drawing the tape through said housing as it is discharged by said ticker.

"12. The combination with a ticker adapted to produce inked impressions on a tape prior to its discharge from said ticker, of an inspection location where the tape may be handled, a heating device for drying the inked impressions on the tape before arriving at said inspection location so that the tape may be protected from being smeared, and a tape pulling device for drawing the tape through said heating device to said inspection location."

One reference was cited, being a patent to James W. Decker, No. 1,839,468, issued January 5, 1932.

The elements of appellant's combination relied upon by him to render the appealed claims patentable are (a) the heat retaining housing and (b) the heating means associated therewith, plus, as definitely expressed in claim 12, (c) "an inspection location where the tape may be handled."

The patent to Decker relates to tape control and tape-treating means. It discloses an element designated in the specification as a "bath" which washes the ink from the tape as the tape passes therethrough, and a heating chamber through which the tape passes and is dried after having been washed in the bath. It is declared in the statement of the Examiner that "all tape projecting devices are necessarily provided with inspection locations where the tape may be handled in threading the machines," and, as to the Decker patent, points are indicated where inspections of the tape may be made; further, it is said by the Examiner that the inspection location feature of appellant is included in some of the allowed claims.

The above-mentioned features of Decker are not claimed in his patent, and the decision of the Board states that "the patent to Decker relied upon by the examiner does not directly show a device anticipating these [appellant's] claims." The Examiner also said, in substance, that Decker's device as embodied in the features above described "is intended for another purpose." Both tribunals agreed, however, in the holding that, as expressed by the Board: " * * * It is considered that in view of the showing in Decker, of means for drying a traveling film, if desired, in

combination with a tape printing ticker mechanism and projecting device, * * * it would be obvious to one skilled in the art to broadly associate a drier with a ticker tape if thought convenient or necessary to prevent smudging. * * *"

Before us it is argued on behalf of appellant, that he "seems to have been the first to have taken any steps in the direction of compelling wet printer's ink to be reduced to a dry condition on a tape before the same is handled manually by the broker or his customers or before it is dealt with mechanically as by a tape pulling mechanism." It is said that in moist climates (for example, "in New Orleans throughout the year and in New York, especially in August") where the ink is slow to dry, much annoyance is caused those who handle the tape before the inked figures thereon are dried, as well as those who may wish to read the figures subsequent to the tape being so handled, because of the smudging which takes place; and it is urged that appellant by his device solved a problem for which he is entitled to reward as an inventor.

Much emphasis is placed by appellant on the "inspection location" feature, as expressed definitely in claim 12, supra, and it is urged that from the finding of patentability as to the allowed claims, it would seem to follow that "he should be clearly entitled to allowance of corresponding claims which do not require the projecting device. * * *" In this connection it is said in appellant's brief that appellant's "inspection location," as defined in his application, "very definitely is the location to the left of the outlet opening in the housing. * * *" As to this latter contention, it may here be said that the claim definitely mentioning this feature (No. 12, supra) does not, of itself, limit the "location" to any specified point.

Appellant insists the described device of Decker was not intended to and does not dry the ink, and that it cannot be reconstructed to do so "without creating a condition that would directly conflict with the problem sought to be solved by the Decker patent."

The issue seems to us to be quite a narrow one, while the appealed claims taken as a whole are rather broad in scope.

We have not attempted any minute analysis of the allowed claims, since they are not of interest here, but a casual inspection of them indicates that appellant has been allowed several that are limited to the features and arrangement described in his application. His specific structure would seem to be protected in the allowed claims.

However this may be, this and other courts many times have announced the rule that rejected claims may not properly be measured by allowed claims in order to determine patentability of the former, but must be considered in the light of their own limitations or lack of limitations. In the case of In re Borden, 68 F.(2d) 983, 984, 21 C.C.P.A. (Patents) 915, 918, it was said: "We are not here concerned with the allowed claims. It is presumed that they were allowed by reason of limitations contained in them which defined patentability over the prior art in a manner not defined in the claims rejected."

We are not convinced that there was error in the decisions rejecting the appealed claims for the reasons given by the tribunals of the Patent Office.

The decision of the Board of Appeals is affirmed.

Affirmed.