## MINNESOTA MINING & MANUFACTURING CO. v. COE, Commissioner of Patents.
### No. 64920.

District Court of the United States for the District of Columbia.

May 19, 1939.

H. H. Benjamin, of Washington, D. C., and Paul Carpenter, of Chicago, Ill. (J. T. Basseches, of New York City, and Harold J. Kinney, of St. Paul, Minn., of counsel), for plaintiff.

R. F. Whitehead, of Washington, D. C., for Commissioner of Patents.

LUHRING, Associate Justice.

The plaintiff, who is the assignee of Clifford L. Jewett, proceeds under Section 4915, R.S., 35 U.S.C.A. § 63, for the issuance of a patent.

On December 1st, 1933, Jewett filed his application, Serial No. 700632, for a patent upon the improvement in colored granulated material.

The invention concerns coated granules or particles, and especially artificially coated or colored roofing granules, which have a base granule, e. g. quartz, quartzite, igneous rock, artificial mineral substances, etc., over which is provided an insoluble weather-resisting coating resulting from the reaction of a clayey material, e. g. kaolin, with an alkali silicate, e. g. sodium silicate, having disseminated therein a suitable pigment, e. g. iron oxide, chrome oxide, etc. The coating composition comprises a reaction product of two important ingredients, namely a clay, and an alkali silicate.

The invention contemplated an improved method of applying a color bearing coating to mineral granules, which does not necessarily require, and, in fact, preferably avoids the employment of the extremely high temperatures usually found necessary in producing glazed coatings. It is the aim of the invention to produce a coating containing a silicate and a clay wherein a substantial dehydration of the mixture takes place without fusion thereof. The temperature employed ranges from 450 degrees C. to 750 degrees C., or 850 degrees F. to 1400 degrees F. Upon the application of the heat in controlled amount, a reaction between the sodium silicate and clay results to form an insoluble and weather resisting coating on the individual granules which permanently retains the pigment so that a color bearing coating is produced.

The claims involved here are 11, 17, 21, 22, 26, 32, 33, 34, 42, 43, 53, 59, 60, 66, 67, 68, 69 and 70. Claims 26, 33, 34, 67 and 68 are illustrative and read as follows:

"26. A new article of manufacture, granulated material having a color bearing coating on the individual granules thereof, comprising primarily the 'heat cementitious' reaction product of sodium silicate and clay carrying a pigment treated at a temperature in excess of 450 degrees Centigrade. (842 degrees Fahrenheit)

"33. The method of producing coatings on granulated material which includes reacting an alkali silicate and a clay by heat on the surface of a heat-resistant base granule to produce an insoluble weather resisting coating thereon and controlling the heat treatment within limits above substantially that to attain a dehydration of the coating but short of fusion thereof.

"34. The method of producing coatings on granulated material which includes reacting an alkali silicate and a clay by heat in excess of 850 degrees F. on the surface of a heat-resistant base granule to produce in situ an insoluble weather resisting 'heat cementitious' coating thereon.

"67. As a new article of manufacture, roofing granules of the class described having on the exterior thereof a substantially non-blooming coating, said coating consisting substantially of the reaction product of hydrous plastic clay and sodium silicate and being substantially free from water-soluble salts of sodium.

"68. As a new article of manufacture, roofing granules of the class described having on the exterior thereof a substantially non-blooming insoluble colored coating, said coating consisting substantially of pigment and the reaction product of hydrous plastic clay and sodium silicate, and being substantially free from water-soluble salts of sodium."

The claims were rejected by the Patent Office as being unpatentable in view of the prior art as exemplified in the following references: Fisher, 1,572,425, Feb. 9, 1926; Walton, 1,855,210, Apr. 26, 1932; Nicholson, 1,910,444, May 23, 1933.

The Fisher patent discloses the use of sodium silicate in coating granules of the type shown in the Jewett application, but makes no mention of clay or of a coating operation employing clay and sodium silicate.

The Nicholson patent relates to the manufacture of abrasive material and has for its principal objects the provision of abrasive articles adapted to provide a greater efficiency in polishing and grinding operations. Here the granules are treated with Albany clay and borax. The mixture of clay and borax becomes fused to the abrasive grains when the coated grains are brought to a temperature of 900 degrees C. or 1652 degrees F.

In discussing, among others, Claims 11, 17, 21, 22 and 26 here in issue, the examiner points out that although Nicholson states that a fusion of the clay and the fluxing agent takes place, the temperature employed by him is within the range described by Jewett, and argues that if Jewett may employ temperature ranging from 1600 degrees F. to 2000 degrees F. (see 1st paragraph, page 9, of Jewett application) without fusing, then the temperature of Nicholson, falling in the broad range disclosed by Jewett, must produce the same result.

He concludes that any differences that Nicholson's granule may possess over that of the claims mentioned are one of degree rather than of kind because Nicholson is employing temperatures that fall within the range disclosed by Jewett.

It is obvious that Nicholson is not dealing with a granule designed or adapted to serve the same purpose as Jewett's granule, that is for roofing and the like. Although Nicholson describes the use of clay, bentonite, etc., these materials are used for the express purpose of making the usual glasslike smooth surface of abrasive grains rough and lustreless in order that they may be later bonded with other materials.

The file wrapper in the Beasley patent No. 2,001,448, issued May 14th, 1935, discloses that the Nicholson patent was cited as a reference there, but was not deemed sufficient to bar the issuance of the patent to Beasley.

The Beasley invention relates to the manufacture of artificially colored granules for use in the provision of a mineral surfaced roofing. The Beasley application was filed May 2d, 1934, five months after the Jewett application. Indeed, Jewett unsuccessfully sought an interference, and, of the claims here in issue, Claims 69 and 70 are identical with Claims 8 and 9 of Beasley.

The primary reference is the patent to Walton. This invention describes the use of sodium silicate combined with a metallic oxide for the purpose of producing a coating on granules to be used in roofing, shingles, etc. and primarily to coat particles of slag. In this patent it is stated that after the slag is wet with the mixture it should be heated, preferably to a temperature of about 450 degrees F. so as to complete the drying and drive off a part of the combined water in the silicate. Walton also states that in heating the mixture care must be taken not to raise the temperature so high as completely to dehydrate the soluble silicate as at that temperature all of the chemically combined water will be driven off and the silicate will become granular and flake off.

It is pointed out by counsel for the defendant that, after specifying the desirable temperature, the patent states that it is possible to continue the rise in temperature to about 1200 degrees F. when an actual fusion between the oxide and the silicate and the surface of the slag will take place. According to the patent it is possible to carry the temperature up to the actual fusion point of the slag, although this would require recrushing.

For colors a great variety of materials may be used, but Walton prefers metallic oxides, or earthy materials carrying such oxides. For brown he prefers an umber, which he states is "a clay but carries an iron oxide." For yellow, ochre may be used, "and these colors can be combined for desired shades."

The Patent Office contends that Walton taught the use of clay and disclosed that the coating could be heated to the temperature suggested by Jewett. It is also contended that "Nicholson further discloses the principle of utilizing the reaction between clay and borax as a coating and binding material."

The Walton patent fails to anticipate the present invention as defined in the claims in issue for generally the following reasons: (1) Walton does not teach or recognize that there is any merit in employing as a coating for roofing granules a reaction product of sodium silicate and clay. Walton admittedly contemplates the use of sodium silicate per se but the incidental mention of clay on which the Patent Office has seized as a basis of rejection of the claims of the present case is only one that came about accidentally as

a result of a mention by Walton of pigments which he might use to produce a brown or yellow color or some mixture thereof. The Walton disclosure does not involve the use of clay with sodium silicate in the production of roofing granules having a coating of a red or a green color or of any other color except for a brown or a yellow or a combination of brown and yellow. (2) Walton does not recommend or suggest the use of temperatures such as taught in the Jewett invention for reacting any type of coating ingredients, nor does he actually teach such coating temperatures, e. g. 850 degrees to 1400 degrees F., for reacting clay and sodium silicate mixes. On the contrary, as heretofore noted, Walton states that the temperature should not be raised so high as completely to dehydrate the soluble silicate as at that temperature all of the chemically combined water would be driven off and the silicate would become granular and flake off. The patent emphasizes that the "process is a low temperature method of coloring certain siliceous granules such as slag" and Walton recommends a temperature of "about 450 degrees F." or a temperature of "about 450 degrees to 500 degrees F." as a suitable coating temperature at which his sodium silicate will be only partially dehydrated. (3) Where in connection with pigments for making brown or yellow colors, that is umber and ochre, Walton accidentally mentions materials which may have a clay base, it is clear from a consideration of this disclosure and from the testimony presented by the plaintiff that he, Walton, did not intend to employ a temperature any higher than 450 degrees or 500 degrees F. in using such pigments with sodium silicate. At temperatures between about 550 degrees and 650 degrees F. Yellow ochre undergoes a change of color and Walton would not attain his yellow granule by any possibility if he went much above the temperature which he recommends, viz. 450 degrees or 500 degrees F. Certainly he would not get this yellow granule if he adopted the temperatures of the order of 1200 degrees F.

In the absence of the disclosure of the Jewett invention, no one reading the Walton patent would attach any more significance to the clay of the umber pigment than did Walton himself.

The plaintiff seeks to amend Claim 53 by substituting in the last line, in place of a reference to Claim 1, a reference to Claim 11.

Claim 53 reads as follows: "53. In a surfacing material, a bituminous coated backing and a layer of granules thereon individually coated with a layer of a 'heat cementitious' reaction product of a silicate and a clay as set forth in claim 1."

To change the statement in the claim, that the reaction product of a silicate and a clay is as set forth "in claim 1", so as to state that that product is as set forth "in claim 11" is to make an entirely different claim, as will appear from a consideration of claim 1 and claim 11. This can not be done. Lucke v. Coe, 63 App.D.C. 61, 69 F.2d 379.

Claims 60 and 70 were rejected by the Patent Office on the ground that the invention as set out in those claims is not disclosed in the Jewett application.

In discussing Claims 69 and 70, counsel for plaintiff, at page 8 of the record said: "We are ready to drop and dismiss as to claims 69 and 70, but we feel it proper, as we felt it proper in the Patent Office, to direct attention to the fact that we do not subscribe to that term 'glaze' when used in a specific sense to mean a fused product. We have stated specifically in our application, the Jewett application, that we carefully avoid, we carefully refrain from entering the fusion zone of the reaction product of sodium silicate clay in that below the fusion temperature very splendid results are obtained so far as color is concerned."

With the exception of Claims 53, 69 and 70, which will be dismissed, all claims presented are patentable, and the Commissioner of Patents will be authorized and directed to issue a patent in accord with the provisions of Section 4915, R.S., 35 U.S.C.A. § 63.

Claim 26 should be amended as suggested by counsel for the defendant so as to change 450 degrees Centigrade to 850 degrees Fahrenheit. The temperature is the same, and the change is one of terms only. Counsel for plaintiff agree to the amendment.

Counsel will prepare formal findings of fact and conclusions of law in accord with the views herein expressed, together with decree.