Modified.

## In re KOBSEFF.
### Patent Appeal No. 2724.

Court of Customs and Patent Appeals.
April 29, 1931.

Martin T. Fisher, of Washington, D. C. (George F. Scull and Daniel L. Morris, both of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant seeks patent upon alleged new and useful improvements in a process for preventing incrustation in steam boilers.

All of the claims, 10 to 18, inclusive, were rejected by an Examiner of the United States Patent Office, and his decision was affirmed by the Board of Appeals. From the latter decision appeal was taken to this court:

Claims 10 and 16 are typical:

"10. The method of producing an anti-incrustation substance for steam boilers, which includes treating vegetable seeds containing mucilaginous constituents and oil with wet steam under superatmospheric pressure and out of contact with air, to form a mucilaginous emulsion substantially free from oil."

"16. The method of producing an anti-incrustation substance for steam boilers, which includes adding soda to vegetable seeds containing mucilaginous constituents, the soda being approximately one per cent. of the weight of the seeds, and treating the mixture with wet steam under superatmospheric pressure and out of contact with air, to form a mucilaginous emulsion substantially free from oil."

The references are: Brun, French, 369,-904, November 29, 1906; Brun, British, 20,-245, of 1909; Lowther, British, 21,075, of 1900.

In the decisions of the Examiner and of the Board of Appeals reference was also made to a British patent to Dine et al. It is insisted by appellant that this is not a proper reference because dated July 3, 1922. This was subsequent to appellant's original filing date of October 17, 1921, and the insistence is that "a foreign patent becomes a reference only when it is issued or is open to the public as a publication." Dine is not cited by the solicitor in his brief or oral argument. Under the view we take of the case it is unnecessary to determine whether Dine was properly referred to by the tribunals of the Patent Office.

While all of appellant's claims are process

claims, he discloses drawings of an apparatus in which the method is carried out. It is appellant's plan to treat vegetable seeds, such as flaxseed, hemp seed, etc., so as to form a mucilaginous emulsion, substantially free from oil, which emulsion when applied to inner boiler surfaces will prevent incrustation thereon, or will remove such incrustation when formed.

The method is conceded to be novel and useful, and to have had widespread commercial success, but the tribunals of the Patent Office held there was no invention involved, in view of the state of the prior art, it being also held that the claims in their final form included new matter—that is, matter not disclosed or claimed in the original application.

The drawings of the apparatus disclose a device consisting of a cylindrical vessel having a cover and a perforated inner cylinder in which latter the seeds are placed, together with small quantities of soda and starch. Below the outer or condensing vessel is a boiler connected with said vessel by two pipes, one a steam pipe extending upward from the boiler at the side of and entering into the top of the vessel, and the other a pipe extending downward from the bottom of the vessel into the boiler. Each of the pipes is equipped with a valve to be operated by hand. There is also a pipe or tube running through the inner cylinder whose purpose, in part, is to cause a suction of steam from the valve in the steam pipe and promote circulation of the steam through the seeds in the perforated inner cylinder.

In operation, according to the specifications, the inner cylinder is first filled with the required quantities of seed, soda, and starch, the pipe valves being closed. The valve in the pipe leading from the bottom of the vessel to the boiler water is then opened to its fullest extent for about five minutes and hot water rises from the boiler into the seed-containing, inner cylinder whereby the seed are soaked. Then the valve in the steam pipe is opened and steam from the boiler fills the condensing vessel or outer cylinder. This condensing cylinder is equipped with fins whose radiating capacity causes a certain condensation of the steam. This condensed steam passes into the seed-containing cylinder, through the perforations, and contacts with the soaked vegetable seed, taking up the mucilaginous substance and producing the emulsion, which emulsion passes down into the boiler through means provided therefor and saturates the boiler water. The specification says that "the emulsion mixed with the boiler water envelopes the nascent saline deposits resulting from the evaporation of the boiler water and sinks with these deposits to the bottom of the boiler, whence it is an easy matter to remove them in any suitable known manner."

It is not recited in the specification, but it is argued by appellant that, according to natural laws, when the valve in the steam pipe is opened, the pressure at the top and bottom of the condensing vessel is equalized, and that the hot water admitted for soaking the seed for the 5-minute period (if this soaking step be used at all) flows back into the boiler, and the soaked seed are thus left to be acted upon solely by the wet steam.

The applicant states in argument that the soaking process does not have to be used; that the seeds may be left in their dry state in the cylinder, and the wet steam applied to them in this state with the same result produced. It is further said that the production of the emulsion may require as much as 24 hours. The claims as they now read do not embrace the step of soaking by the admission of the hot water from the boiler, but are limited to treating by wet steam under superatmospheric pressure and out of contact with the air.

A reading of that part of the specification which describes the operation, however, does show that the valve in the hot water pipe is opened and remains open for about five minutes before the steam pipe valve is opened. As of course, when the former valve is opened, it is done to admit the hot water, and the specifications recite no process which does not include the opening of the hot water valve.

The record does not contain the original claims made in the application filed October 17, 1921. It does disclose that on November 2, 1927, apparently after there had been some adverse action by the Patent Office, appellant moved to cancel all claims and add those now before us.

This was followed on May 3, 1928, by the Examiner's rejection, and he said in his decision: "The matter in these claims relative to a treatment of the seeds with "wet steam" is clearly new matter not warranted by the original disclosure. Refer to page 5, lines 11 to 16 of the original specification, and the claims appended thereto, which discloses and claims a treatment with "condensed steam" (water) condensed by action of the fins on cylinder 1."

Since one of the issues of this case is that the amended claims contain new matter, that is, matter not disclosed in the original application, it might have been helpful to the court, in construing the original specification, had the original claims been included in the record.

It may be here said that the Examiner seems to have held that by omitting soda from all the claims, except No. 16, appellant introduced new matter. The board did not pass upon this specifically, but the solicitor for the Patent Office concedes, in oral argument, that this omission does not constitute new matter, and that the claims are not vitiated by it. Since this is not a matter of importance here, we deem it unnecessary further to discuss it.

The serious question relative to new matter grows, not out of the omission of the soda element, but in inserting into the new claims the element of "wet" steam.

The specification does not refer to "wet" steam, but to "condensed" steam.

In the arts in which steam is used, we understand different kinds of steam are well recognized and have well-understood meanings and uses, such as "Pure steam," "Dry steam," "High-pressure steam," "Superheated steam," etc.

In Knight's American Mechanical Dictionary "Wet steam" is defined as steam "in which portions of water have passed off with the vapor, and are held in mechanical suspension."

We have found no mechanical definition of the phrase "condensed steam," but the definition given by Funk & Wagnalls New Standard Dictionary of "condense," as a verb, is: "To change from the gaseous or vaporous to the solid or liquid state, as by cooling or compression."

While it might be difficult to draw a line of demarcation so as arbitrarily to determine when wet steam, by reason of saturation with water, ceases to be wet steam and becomes something else, there is evidently a clear and well-understood distinction between wet steam and condensed steam, of which notice must be taken in patent proceedings such as the case at bar.

In the description of the operation or process of appellant given by his learned counsel, arguing in the light of natural laws, a very plausible contention is maintained to the effect that this method must be by means of wet steam, but the court is compelled to measure the issue, not by the argument, but

by the claims themselves, and determine whether the specification supports them, or discloses matter upon which they may be based.

Because of the evident success and value of appellant's contribution to the art, it is with some reluctance that we feel compelled to hold that the disclosures of the specification referring only to condensed steam, which is water, do not support claims for the wet steam process, and that, when "wet steam" was inserted, it brought new matter into the application, as held by the tribunals of the Patent Office.

Whether, if the disclosure of the specification did form a legal basis for the claims, they are anticipated by the prior art, need not be here considered.

The decision of the Board of Appeals is affirmed.