**COTHRAN et al. v. COE, Com'r of Patents.**
**Civil Action No. 5143.**

District Court of the United States for the District of Columbia.

April 25, 1941.

Roy F. Steward and Melvin W. Sandmeyer, both of Washington, D. C., for plaintiff.

W. W. Cochran, U. S. Patent Office, of Washington, D. C., for defendant.

CHESNUT, District Judge (Specially Assigned).

In this case the plaintiffs are seeking a judgment entitling them to receive from the Commissioner of Patents, a patent including 28 claims of which the Commissioner was willing to allow only 2. The jurisdiction of the court and procedure is based on 35 U.S.C.A. § 63, R.S. 4915. The case is a proceeding *de novo*; Butterworth v. United States ex rel. Hoe, 112 U.S. 50, 61, 5 S.Ct. 25, 28 L.Ed. 656; Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856; Nichols v. Minnesota Mining & Mfg. Co., 4 Cir., 109 F. 2d 162; although the decision of the Patent Office, as an experienced tribunal, is entitled to the presumption of correctness. Poulsen v. Coe, App.D.C., 119 F.2d 188; Abbott v. Coe, 71 App.D.C. 195, 109 F.2d 449, 451; Robertson v. Cooper, 4 Cir., 46 F.2d 766. A considerable amount of testimony has been submitted on behalf of the plaintiffs here, which was not available to the Patent Office.

The claimed invention relates to a process for protectively coating fruits and vegetables, to retard shrinking, withering and loss of weight in transportation from orchard or garden to market, involving a period ordinarily of from three days to three weeks; and in addition to the process claims there are other claims, both specific and broad, for the chemical composition used in protectively coating the fruit. A brief statement of the prior progress in the art will contribute to a clearer understanding of the issues here involved.

The applicant for the patent is Charles D. Cothran, who for some years past has been in the research department of the Brogdex Company (the assignee of the patent application), which is engaged largely in the business of selling and licensing processes for protective treatment of fruits and vegetables. For some years past its president was Ernest M. Brogden, a portion of whose name enters into the corporate title of the Brogdex Company. The Compa-

ny does business in California, Florida and Texas. In the case of American Fruit Growers, Inc., v. Brogdex Co., 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801, the Supreme Court considered and held invalid patent 1,529,461 to Brogden and another, claiming a new and improved process of preparing fresh fruit for market by coating it with a solution of borax which rendered it resistant to the decay caused by blue mold, and other organisms and diseases. The Court held that the product claims of the patent as there worded failed to describe a "manufacture" within the meaning of the statute, 35 U.S.C.A. § 31; and held also that if the process claims covered an invention, novelty was lacking at the time of the application in view of a prior patent involving the application of a solution of *boracic acid* to the fruit. The objective of the present Cothran application is distinguishable from the borax or boracic acid solutions for fruit, in that Cothran's invention specifically relates to preserving the fruit from *natural shrinkage and loss of weight,* but not from the attacks of blue mold and other diseases, for which other preventives are designed.

Prior to Cothran's invention, and still in approved and extensive commercial use, the Brogdex method of preserving fruit in transit from orchard to market against natural shrinkage and withering is known as the "hot wax" method. For various phases of this Brogden obtained United States Patents Nos. 1,585,371 in 1926; 1,641,112 in 1927 and 1,940,530 in 1933. The problem involved is how to reduce the rate of natural shrinkage without at the same time adversely affecting the flavor and edibility of the fruit, the surface of which must not be sealed so completely as to interfere unduly with its so-called "breathing or transpiration"; and also to avoid injury to the fruit from the chemicals used. The method adopted, (which has largely become standard practice and resulted only from long research and experimentation) involves bringing atomized molten paraffin, usually containing a relatively small proportion of a considerably higher melting wax, such as carnauba, into contact with the fruit in a chamber heated to temperatures ranging from 180 to 220 degrees F., while the fruit is brushed rapidly with brushes to spread the molten wax thoroughly over the entire surface in a firmly adherent lustrous film which is so thin as to be virtually invisible but which is effective to cut down the rate of withering or loss of moisture to about 30 to 40 per cent of that normal for uncoated fruit, and is the approximate limit beyond which it is not safe to go in sealing the surface of the fruit. This process gives very good results but is comparatively expensive, adding about three cents per box to the cost of the fruit.

It is not claimed for Cothran's present invention that it is more efficient than the "hot wax" process; but it materially reduces the cost to about one cent per box. An important feature of the new process is to apply the wax at ordinary room temperature, thus eliminating the use of heat and brushing. In lieu of the latter Cothran's process consists in applying the wax and oil in the *form of an aqueous emulsion* sprayed upon the fruit or into which it is dipped, which gives it a high lustre or shine without rubbing or brushing. It is claimed that it is nearly as efficient as the hot wax process in retarding natural shrinkage and withering. Although the general idea of using an emulsion of wax and oil seems simple it required much research and experimentation by Cothran to find a specific formula that would give satisfactory results for the particular purpose. In the process of development of his thought he tried and rejected many particular formulas which by tests proved unsatisfactory; but by December 1932 he had found a satisfactory formula and reduced it to practice, and his process has proven commercially successful to such an extent that in 1940 approximately 2,500,000 boxes of fruit were usefully treated by the process. Most broadly stated, the formula comprises a thinly aqueous emulsion containing a waxy material emulsified with the aid of trihydroxyethylamine (or triethanolamine, for short T.E.A.) and a fatty acid. But the more specific formula, which has been used successfully in practice, consists of a waxy material, mainly paraffin; white mineral oil; the product of reaction between substantially equal parts of t-e-a, and oleic acid; and water. As oil and water and wax do not mix it is necessary to emulsify the ingredients so that the wax and oil can be held in suspension in the liquid. Amine is a strongly basic or alkaline substance derived from ammonia. Triethanolamine is now a comparatively inexpensive commercial product. It is a nearly colorless liquid of a faint ammonical odor fully soluble in water and strongly basic. The commercial product, however, had at times the appearance of corn syrup and is viscous in consistency.

The problem of finding a satisfactory process for preserving the fruit from the orchard to the market less expensive than the hot wax method, had long been in general contemplation by the Brogdex Company. The idea that a satisfactory substitute might be found in the use of t-e-a as an emulsifying agent for the wax and oil first occurred to Cothran in 1929 when he read an article in "Industrial and Engineering Chemistry" for July of that year, on the subject of "Triethanolamine Oleate for Oil Sprays". As a result of experimentation over several years he concluded that while amine soap employed as an emulsifying agent might vary widely in specific description, the kind best adapted for his use was prepared by reaction between the ethanolamine, more especially triethanolamine, (commercial) with a free fatty acid such as oleic, stearic, palmitic or linoleic acid. He filed application for his patent September 13, 1934, with 20 claims, and on June 28, 1935 added 8 more claims. The result of the prosecution of the application in the Patent Office was that the Examiner allowed claim 6, for the chemical composition, and claim 24 for the process of applying it; but rejected all the remaining claims, and this action was affirmed by the Board of Appeals. The allowed claims read as follows:

"6. An aqueous emulsion useful for protectively coating fresh fruits and vegetables and having approximately the following composition, all parts being by weight: 4.5 parts of waxy material, mostly parrafin; 0.5 to 1.5 parts white mineral oil; the product of reaction between substantially equal parts (0.5 to 1.5 part each) of triethanolamine and oleic acid; and water sufficient to make 100 parts."

"24. The process of protectively treating fresh fruits or vegetables in preparation for market which comprises distributing uniformly over the surface of each such article a small quantity of an aqueous emulsion of the character defined in claim 6."

It will be noted that claim 6 for the composition is very specific as to the formula, and claim 24 for the process is limited to the specific formula. The complaint here by the applicant is that these claims are so extremely limited in scope that they could be easily evaded by persons seeking to appropriate the benefits of the invention without payment therefor, and therefore they do not sufficiently protect the plaintiff's real invention. The first 16 claims are for the "composition" and the remainder for the "process". Some are for a very broad definition of the composition and some are specific, of which claim 6 is the most specific. Typical of the broadest claims are 15 and 28 which read as follows:

"15. A thinly fluid aqueous emulsion useful for protectively coating fresh fruits and vegetables, comprising waxy material emulsified with the aid of trihydroxyethylamine and a fatty acid."

"28. The process of protectively treating fresh fruits or vegetables in preparation for market which comprises distributing uniformly over the surface of each such article a small quantity of an aqueous emulsion of the character defined in claim 15."

Illustrative of what may be called the medium claims, that is less specific than 6 and 24, and more specific than 15 and 28, are claims 2 and 21 which read as follows:

"2. An aqueous emulsion useful for protectively coating fresh fruits and vegetables, comprising 1 to 10 parts of waxy material and a free oil in proportion less than half that of the wax, emulsified with less than 5 parts of an amine soap of a fatty acid selected from the group consisting of oleic, stearic and linoleic acids, together with water sufficient to make 100 parts, all parts being by weight."

"21. The process of protectively treating fresh fruits or vegetables in preparation for market which comprises distributing uniformly over the surface of each such article a small quantity of an aqueous emulsion of the character defined in claim 2."

Particular variations in some of the other claims will be noted later. The Patent Office rejected claims 1 to 5, 11 to 23, 27 and 28, because readable on and anticipated by the wax emulsion composition shown by a patent to Nedvidek, No. 2,084,062, issued June 15, 1937, applied for March 29, 1930; and also rejected claims 7 to 10, 25 and 26, as lacking invention over the patent to Nedvidek in view of the patent to Lindstaedt, No. 1,890,158, December 6, 1932, applied for November 30, 1928.

The principal objective of the Nedvidek patent is the *cleaning* of fruit as it comes from the groves and its incidental protection from blue mold and damage by insects before being marketed. The invention was stated in the specifications (p. 1, lines 49

etc.), to relate to improvements in the nature of cleaning and conditioning fruits, by means of which the process of cleaning fruit is simplified and rendered more effective. The formula used for the liquid composition as described in claim 2 comprised "an aqueous soap solution containing not more than 15% of an emulsion of kerosene, paraffin, pine oil and triethanoleate, the pine oil being present in concentration between 0.06% and 0.15%, the bath being maintained at a temperature of between 100 and 120F." As originally filed the application made no reference to the subject of retarding the natural wrinkling and shrinkage of the fruit, but by amendments of July 13, 1932, some incidental references were made to the latter subject in the following sentences (p. 2, col. 1, lines 32 and 45) reading as follows:

"Furthermore, strong emulsifying solutions and solvents tend to remove the naturally occurring waxes present in the skins of the fruit, such wax removal accelerating the wrinkling and shrinkage of the fruit. * * * The wax content of the fruit by this method is maintained at or above the content of natural waxes present in the skins of the fruit, thus preventing wrinkling or shrinkage."

The relevancy of the reference to the Lindstaedt patent is very slight. In Cothran's claims 7 to 10, and 25 and 26, the description of the formula is that of a waxy emulsion containing the product of reaction between oleic acid *and a larger quantity of an amine* than is theoretically required to form a neutral soap with the oleic acid. The patent to Lindstaedt was for an *oil spray* for fruit in the groves, not containing wax at all; but the Patent Examiner thought the Lindstaedt disclosure a sufficient anticipation of Cothran when considered in connection with Nedvidek because Lindstaedt showed an aqueous emulsion comprising oil and the product of reaction between the fatty acid *and a larger quantity of an amine* than is theoretically required to form a neutral soap with the oleic acid. He concluded therefore that the compositions of Nedvidek and of Lindstaedt are so sufficiently similar in nature and use that an expedient adopted in one would be obvious for use in the other, saying also that both are aqueous emulsions for coating, and the objects to be coated by them are quite similar in nature. The Examiner also pointed out that Cothran was quite vague in the purpose and utility of the excess amine mentioned in some of his claims.

The plaintiffs here contend that the evidence taken in this court shows that the conception of Cothran's invention really anticipated Nedvidek's application of March 29, 1930, and that Cothran diligently pursued work on his idea until its satisfactory reduction to practice in 1932. Considerable testimony was introduced to support this contention. Without reciting it in detail, it will be sufficient to say that while Cothran had in general the thought that something might be worked out for his objective by use of t-e-a as early as March 1930, his conception at that stage was a mere general idea entirely lacking in definiteness. It is true that he ordered a quantity of t-e-a in February or March of 1930, and thereafter from time to time experimented with it for various purposes; but the testimony (see particularly the cross-examination of Cothran) does not satisfactorily show any very definite determination of the formula until, at the earliest, March 1932. For the most part Cothran's personal testimony also lacks the corroboration which is required in establishing priority of invention. The general idea of possibilities that Cothran had before March 29, 1930, does not constitute the "kind of conception" here involved, which means the complete performance of the mental part of the inventive act. Merganthaler v. Scudder, 11 App.D.C. 264; Wheaton v. Kendall, C.C., 85 F. 666, 671; Townsend v. Smith, Cust. & Pat.App., 36 F.2d 292, 295; Hayes v. Crouse, 58 App. D.C. 28, 24 F.2d 470; French v. Halcomb, 26 App.D.C. 307.

But while I fail to find priority of invention of Cothran as against Nedvidek, nevertheless I think it clear that Nedvidek should not be regarded as an anticipation of the *more specific claims* in Cothran's application. Clearly the principal objectives of the two are quite different. Nedvidek is concerned with the cleaning of fruit as it comes from the orchard; while Cothran deals with the retardation of natural shrinkage, withering and loss of weight. The slight reference to the latter appearing for the first time even so late as July 13, 1932 in Nedvidek is purely incidental and negative rather than positive. Thus Nedvidek says that his particular formula, in contrast with certain strong cleaning solutions, does not tend to remove the naturally occurring waxes on the skins of the

fruit which, if removed, accelerate the wrinkling and shrinkage of the fruit. And again he says somewhat vaguely that by his method the wax content of the fruit is maintained at or above the content of the natural waxes present in the skins of the fruit, thus preventing wrinkling or shrinkage. These incidental references to the subject of shrinkage, supplied in the course of Nedvidek's patent application after Cothran had for two years been working on the development of his formula, and had substantially devised it before the Nedvidek amendments of July 13, 1932, do not constitute any important feature of the Nedvidek patent. His claims do not contain any reference to retarding shrinkage. Counsel for the Commissioner has assumed in his argument that these incidental references supplied at a much later date than the application (see Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; In re Kobseff, Cust. & Pat.App., 48 F.2d 956) need not be considered as important on the issue of priority; but nevertheless contends that the disclosures of Nedvidek in the application as originally made are sufficient to defeat certainly the broad claims of Cothran, and also all the others rejected by the Patent Office.

In considering the effect of Nedvidek on Cothran it is relevant to note that the testimony in this case very clearly shows that the Nedvidek formula is utterly unsuitable and useless for Cothran's objective. In all but one or two of Nedvidek's claims a liberal use of kerosene is an important constituent, and it is very clear from the testimony that the resultant odor of kerosene, when used in other than very small quantities in the application of Nedvidek's formula, would very greatly impair the marketability of the fruit. The evidence also shows that the Nedvidek formula has not been commercially successful even for its particular use of cleaning fruit, except in a modified form, and then only for very dirty fruit.

██ We come now to the question, what, if any, of Cothran's claims rejected by the Patent Office should be here allowed. It is important to note that the Office did allow claims 6 and 24. This, of course, indicates that prima facie Cothran has made a patentable invention. And I am impressed by the testimony with the view that it constitutes a real contribution in the art or business of marketing fruit which must be transported long distances from orchard to market. If the Patent Office had rejected the two allowed claims, the testimony in this case would, I think, amply justify their allowance. But the issue here is to what extent the numerous remaining claims which were rejected by the Patent Office should be allowed. Here we have to deal with 26 separate claims. The specific Cothran formula which has proven successful for his particular objective is obviously not a great pioneer invention. At best it is merely a relatively inexpensive substitute for a more costly and probably better process, the hot wax method. The use of emulsions containing wax and oil in coating fruit was of itself not new with Cothran, as it had been previously used by Nedvidek for·a different purpose. What Cothran has contributed is a specific formula for a very particular purpose in the general field of protectively treating fruits. It would seem that a few claims at the most ought to be sufficient to protect his real discovery.

The proliferation of claims in patent applications is an unfortunate incident of much patent practice. Possibly it may be said that patent solicitors in drawing claims have been induced to unnecessary multiplicity by the tendency of some judicial decisions to over-emphasize the literal phraseology of claims, while in other cases, great liberality has been exercised in the application of the doctrine of substantial equivalents. In the present case I take the view that the Patent Office has failed to attribute sufficient significance to the quite dissimilar objectives of Nedvidek and Cothran and has *too broadly* construed the Cothran claims in finding that the *more specific ones* are readable on Nedvidek, even though in an issue of this nature the rule is generally said to be that the claims should be broadly construed. In re Carr, 54 App.D.C. 283, 297 F. 542. Of the 12 Nedvidek claims, the first specifies the use of pine oil only, while the remainder all include kerosene, some with and some without pine oil, sometimes in combination with wax and t-e-a, either or both. And in most of the claims it is specified that the solution is to be applied at temperatures above normal (100 to 120 degrees F.). The substance of the whole matter would seem to be that there is a very material difference between what Nedvidek and Cothran respectively devised. Their ultimate purposes were different and their respective chemical formulas were therefore naturally

quite different. The ingredients in one make it quite unsuitable for the purposes of the other. The cleansing of fruit, as it comes in an usually dirty state from the orchard, is quite different from retarding shrinkage in transportation. The conditions are dissimilar, and so must be the chemical formulas. The mere fact that both use an aqueous emulsion containing some wax and some oil, is not sufficient to show substantial identity of conceptive invention. Apparently Nedvidek's formula would be comparatively useless for cleansing without a liberal amount of kerosene, the use of which by Cothran would entirely destroy the commercial value of his composition.

■ I conclude that Cothran is entitled to some of the rejected claims which will be necessary to protect his discovery to a fuller extent than would probably be the case if he were limited to the very specific formula in claim No. 6 allowed by the Patent Office. He should not be so rigidly held to the exact proportions of wax and oil, t-e-a, oleic acid and water. His present most successful formula (489a, Plaintiffs' Ex. 16) apparently varies somewhat from the precise formula contained in Claim 6. And it is quite possible that further experimentation will result in some other variation of proportions although approximating his presently used formula. On the other hand, the claims to be allowed to him ought not to be so general as to *inhibit others from further experimentation with the same substances and possible development of more successful formulas for accomplishing the same general objective.* Cothran's discovery is a real one but it is narrow and limited. What he has discovered should be reasonably protected, but he should not have a monopoly which will discourage further scientific research possibly resulting in a different formula not within the range of substantial equivalents to which Cothran ought to be fairly entitled.

■ As a result of the trial and argument of the case, the plaintiff has limited the request for claims to be granted (in addition to 6 and 24 allowed by the Patent Office), to claims 1, 2, 3, 4, 5, 7, 9, 13, 15, 16, 20, 21, 22, 23, 25, 27 and 28. Of these

I conclude that he is entitled to 1, 2, 3, 5, 20, 21, 22 and 23, in accordance with the principles heretofore expressed. The remaining claims still insisted upon by the plaintiff should not be allowed. It will be sufficient to state the reasons therefor briefly. Claim 4 is too general and broad and seems unnecessary in view of those to be granted. 7 and 9 feature the use of *more amine* for the reaction with the fatty acid than is theoretically required to form a neutral soap; and 25 is for the corresponding process. This particular feature is not specified by Nedvidek, but its utility is not readily apparent and is not clearly explained. It is suggested that it increases the penetrating effect of the emulsion; but this particular characteristic is seemingly anticipated by Lindstaedt (p. 2, col. 1, lines 12 to 19, and 59 to 61). I consider the claims too general.

The distinguishing feature of claims 13 and 27 are the specification of the use of "a white mineral oil". In view of the whole subject matter there seems no patentable differentiation or validity in this specification. 15 and 16, and the related 28, are entirely too broad and general in phraseology. 16 reads as follows: "A thinly fluid aqueous emulsion useful for protectively coating fresh fruits or vegetables, comprising waxy material and a free oil emulsified with the aid of trihydroxyethylamine and a fatty acid." 15 is even more general as it eliminates the item of a "free oil". The wording is sufficiently general to be covered by some of the prior Nedvidek claims, unless the phrase "for protectively coating fresh fruits and vegetables" of itself furnishes sufficient patentable particularity, which is at least doubtful. Cf. Stearns & Co. v. Russell, 6 Cir., 85 F. 218, 224, and Braren v. Horner, Cust. & Pat.App., 47 F. 2d 358, with National Fruit Products Co. v. Musselman Co., D.C., 8 F.Supp. 994; and Hall v. Shimadzu, Cust. & Pat.App., 59 F.2d 225, 226, 227. But even if the phrase, read in the light of the specifications, can be properly regarded as a limitation, I still think the particular claims not allowable because not sufficiently specific.

Counsel may submit the appropriate form of judgment for allowance of claims 1, 2, 3, 5, 20, 21, 22 and 23.