# RE PEIN.

## PATENTS; PATENTABILITY; ANTICIPATION; NOVELTY.

1. A claim in an application for a patent for improvements in liquid-measuring devices, which recites a measuring device for aerated liquids under high pressure, comprising a pair of cups, a vent pipe connecting said cups and provided with check valves at each end, so arranged and disposed that the vent pipe will be open only when said cups are being filled or discharged, and means for filling one cup and discharging the other cup simultaneously, each cup being adapted to hold a predetermined quantity of aerated liquid under high pressure,—was rejected because readable upon a prior device patented to one Williams.

2. There is nothing patentable in adding a check valve to a liquid measuring device for the purpose of performing with the aid of a float a function which, in a prior patented device, a float alone performs, or can be made capable of performing, without the exercise of inventive skill.

3. There is nothing patentable in substituting a "four-way" valve in the vent pipe of a liquid-measuring device, for a structurally similar "two-way" valve employed to perform the same function in a prior patented device.

4. There is nothing patentable in making unobstructed the supply and discharge pipes connected to the cups of a liquid measuring device, by omitting, with a corresponding loss of function, floats which in a prior patented device are placed in the cups and so connected with locking devices as to prevent the manipulation of the valves in the supply and discharge pipes until one cup is entirely empty and the other is entirely full, and which are capable of removal by mere mechanical skill.

5. There is nothing patentable in modifying, so as to render them operable by high pressure only, the vent-closing floats in a prior patented device for measuring liquids, which are operable by either high or low pressure.

6. There is nothing patentable in altering the size and shape of an element described in a prior patented device, where the difference in function is already well known in the art.

Patent Appeal No. 896. Submitted January 20, 1914. Decided March 2, 1914.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting certain claims in an application for a patent.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellant's application for patent relates to improvements in liquid-measuring devices.  Claims 1 and 2 of his application were allowed by the Primary Examiner, but the following were rejected on reference to a patent to one Williams, which holding was affirmed by the appellate tribunals of the Patent Office:

"3. A measuring device for aerated liquids under high pressure, comprising a pair of cups, a vent pipe connecting said cups and provided with check valves at each end, so arranged and disposed that the vent pipe will be open only when said cups are being filled or discharged, and means for filling one cup and discharging the other cup simultaneously, each cup being adapted to hold a predetermined quantity of aerated liquid under high pressure.

"4. In a liquid-measuring device for high-pressure liquids, a pair of cups, a vent pipe connected with said cups and provided with a check valve at each end, a float for each valve, free and unobstructed supply and discharge pipes connected to said cups and a four-way valve connected to said pipes so that by turning said valves, said cups may be alternately charged and discharged with an aerated liquid under high pressure.

"5. In a liquid-measuring device adapted for high-pressure liquids, a pair of cups, a vent pipe connecting the upper portions of said cups, a valve in each cup for closing the communication with the vent pipe, a float connected with each valve and disposed within its cup and constructed to be actuated to close the valve by high pressure only, and means for filling one cup and automatically discharging the other cup simultaneously, the discharge being occasioned by the passage of gas under high pressure from one cup to the other.

"6. In a liquid-measuring device adapted for high-pressure

liquids, a pair of cups, a vent pipe connecting the upper portions of said cups, a valve in each cup for closing the communication with the vent pipe, a float connected with each valve and disposed within its cup and constructed to be actuated to close the valve by high pressure only, means for filling one cup and automatically discharging the other cup simultaneously, the discharge being occasioned by the passage of gas under high pressure from one cup to the other.

"7. In a measuring device for aerated liquids under high pressure, a pair of cups, a vent pipe connected with each of said cups, there being restricted communication between said cups and pipe, a valve stem in each communication, a valve carried by each stem adapted to seat at the top of the cup to close said communication, a hemispherical float of large capacity connected with each stem constructed to be actuated by high pressure only, and means for filling one cup and discharging the other cup simultaneously.

"8. In a measuring device for aerated liquids under high pressure, a pair of cups provided with supply and discharge pipes, a vent pipe connected with each of said cups, there being restricted communication between said cups and pipe, a valve stem in each communication, a valve carried by each stem adapted to seat at the top of the cup to close said communication, a hemispherical float of large capacity connected with each stem constructed to be actuated by high pressure only, means for filling one cup and discharging the other cup simultaneously, the supply and discharge pipe for said cups being valveless."

*Mr. Joseph L. Levy* and *Mr. O. E. Edwards* for the appellant.

*Mr. Webster S. Ruckman* for the Commissioner of Patents.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

We agree with the tribunals below that the Williams' structure is capable of being operated with a liquid under high

pressure; hence every element of claim 3 is readable on the prior device.

Claim 4 calls for a check valve for each end of the vent pipe and a float for each valve, while Williams shows merely a float which also acts as a check valve. It is contended that the float of Williams will not prevent the back flow of a liquid under pressure. This contention was not sustained in the Patent Office, where it was held properly, we think, that the float of Williams is capable, or may be made capable without the exercise of inventive skill, of withstanding such back pressure, and that the use by appellant of a check valve with a float therefor is but the substitution of one well-known equivalent for another.

It is next contended that the claim under consideration calls for a "four-way" valve, while the Williams' patent specifies a "two-way" valve. Though these valves are called by different names, in structure they are substantially the same. The next difference alleged is that this claim demands that the supply and discharge pipes be unobstructed. In the Williams' patent, floats are described situated within the cups at the ends of the supply and discharge pipes, which would probably, as claimed by appellant, be forced against their seats by liquid under pressure, thus preventing the operation of the device. But the purpose of these floats is to prevent, by means of locking devices with which they are connected, the turning of the handle carrying the valve in the supply and discharge pipes of the cups, until one of the cups is entirely empty and the other entirely full. It would require but the exercise of mere mechanical skill to remove these floats. The omission of this element, with a corresponding loss of function, does not amount to invention.

In regard to claims 5 and 6, we agree with the Board of Examiners in Chief, who said: "Claim 5 provides that the floats which close the vents shall be actuated by high pressure only. Williams' floats, so far as perceived, will be operated by either high or low pressure. It is not understood wherein there could be any invention in modifying these floats so that they could be operated only by high pressure. This claim, therefore,

was also rightly rejected. Claim 6 involves merely the considerations hereinabove discussed, and was also rightly rejected."

Claims 7 and 8 provide that the floats shall be hemispherical and of large capacity. We are unable to discover invention in merely altering the size and shape of an element described in a patented device, where the difference in function is one already well known in the art.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required. *Affirmed.*