**SMITH v. KINGSLAND, Commissioner of Patents.**

No. 9660.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 15, 1948.

Decided Sept. 6, 1949.

Mr. W. B. Morton, New York City, with whom Mr. Clarence M. Fisher, Washington, D. C., was on the brief, for appellant.

Mr. Joseph Schimmel, Attorney, United States Patent Office, Washington, D. C., with whom Mr. W. W. Cochran, Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Forrest H. Smith appeals from a judgment of the United States District Court for the District of Columbia which refused relief in his suit to obtain a patent, brought under § 4915 of the Revised Statutes, 35 U.S.C.A. § 63. The District Court held that "The claims at bar are for the same invention as claim 2 of plaintiff's patent 2,051,348, and are unpatentable in the application at bar, because to allow said claims would result in double patenting." Patent No. 2,051,348 was issued to Smith in 1936 pursuant to an application made in 1930.

Smith's application, which was denied by the Patent Office and the District Court, is for an improvement in a drying house apparatus and method for curing tobacco. Appellant's three rejected claims, two of which are in apparatus form and one in method form, are as follows:

"1. In a drying house for curing tobacco, means for maintaining said house throughout substantially its entire interior at a temperature to cure bright tobacco supported therein, said means comprising a plurality of small separate low-intensity oil-burning heaters arranged about the floor of said house in a manner to provide a substantially uniform temperature throughout the cross sectional area of said house, deflecting baffles overlying said heaters and arranged to deflect the products of combustion laterally into the spaces surrounding said heaters, means for supplying fuel to said heaters, and means for independently regulating the rate of combustion of said separate heaters.

"2. The method of curing tobacco in a drying house which consists in burning at a plurality of locations throughout the floor of the house a liquid fuel to thereby generate a number of columns of heated products of combustion, directing said products of combustion laterally into the spaces surrounding said locations in such manner as to produce a mixture of said products of combustion with the air of the drying house, which mixture is of substantially uniform temperature throughout the cross sectional area of said house, said individual heaters being provided in sufficient number to heat substantially the entire interior of said house to a temperature sufficient to cure bright tobacco, but at no point above the mixing zone high enough to injure said tobacco.

"3. In a drying house for curing bright tobacco, a plurality of small separate low-intensity oil-burning heaters arranged about the floor of said house in a manner to provide a substantially uniform temperature throughout the cross sectional area of said house, each said heater comprising a plurality of burners and deflecting baffles overlying said burners and arranged to deflect the products of combustion laterally into the spaces surrounding said heaters, means outside said house for supplying fuel to said heaters, connections between said heaters, and means for independently regulating the rate of combustion of said separate heaters."

Claim 2 of appellant's prior patent, which the District Court held to be for the same invention as that for which the three claims of the present application were made, is as follows: "2. The combination with a drying house including side walls and end walls, of a plurality of spaced independent fuel burning heating units located within the house and arranged in series extending substantially around and adjacent the walls thereof, means located above the units for supporting articles to be dried, spaced baffle means interposed between the units and the articles, and a screen interposed between the baffle means and the articles."

When this case was argued orally before us, counsel for appellant conceded the purpose of the present application to be merely to eliminate a non-essential element of the patent No. 2,051,348. In claim 2 of that patent, it will be observed that Smith claimed in part "The combination with a drying house * * * of a plurality of spaced independent fuel burning heating units * * *, spaced baffle means interposed between the units and the articles [to be dried], and a screen interposed between the baffle means and the articles." Of the present application, appellant says in his brief, "The essential elements of the invention are a plurality of low intensity oil burners arranged in groups of three or more and distributed about the floor of the tobacco barn underneath the hanging tobacco to supply the heated gasses for curing the tobacco."

The only difference between the application here and claim 2 of the appellant's 1936 patent is that in the latter provision was made for a screen located over the burner housing or baffle, while in the application now being considered that screen is omitted. It should be noted also that in describing his invention in patent No. 2,-051,348, the appellant said, "In practice, I may desire to support a relatively long and narrow screen 31 above each of the several series of burners, the screen being supported by the walls of the house." His use of the expression "I may desire" indicates that he did not regard the screen as an essential element in his 1936 patent, and that he claimed invention whether or not the screen was used.

The sole question presented by the record is whether the omission of the screen constituted invention so as to entitle Smith to a new patent on his curing device.

█ As Smith claimed for the invention covered by patent No. 2,051,348 the positive use of the screen, undoubtedly that patent covered the device with the screen included, for the claims made control the scope of an invention for which a patent is granted. Universal Oil Products Co. v. Globe Oil & Refining Co., 1944, 322 U.S.

471, 64 S.Ct. 1110, 88 L.Ed. 1399; Milcor Steel Co. v. George A. Fuller Co., 1942, 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332; Montgomery Ward & Co. v. Coe, 1943, 78 U.S.App.D.C. 224, 139 F.2d 17.

██ It is also true that claims must be read in the light of the specification, not to enlarge them, but to ascertain their meaning and the intention of the patentee with respect to them. Schriber-Schroth Co. v. Cleveland Trust Co., 1940, 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132; American Fruit Growers, Incorporated v. Brogdex Co., 1931, 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801; Hawkinson Co. v. Wilcoxen, 6 Cir., 1945, 149 F.2d 471. Since Smith's specification in his application for patent No. 2,051,348 described his invention without a screen, and then added he might desire to use one, we must conclude that claim 2 of the granted patent, although it claimed the screen, covered the drying device, either with or without one. In Emery Industries, Inc., v. Schumann, 7 Cir., 1940, 111 F.2d 209, the court said the specification should always be read as a background to the claims.

Under these principles, we hold that in the specification of patent No. 2,051,348, Smith envisaged the use of his apparatus without the screen. In saying he "may desire" to use it, he indicated the possibility of not doing so, thus implying the screen was not essential to the functioning of his device. He ascribed no specific function to it. It follows that patent No. 2,051,348 covers the drying apparatus without the screen, as well as with it.

 But if that were not so, i. e., if Smith's prior patent should not be construed as covering the device without the screen, it is our opinion that his new claims were properly rejected because they were anticipated in the specification of the patent granted in 1936. Claims of a patent do not control when the question is whether the use claimed in a subsequent application had been anticipated by the prior patentee; in that situation the specification of the prior patent may be inspected to determine

whether that patent "anticipated" the use claimed by the new application,[1] to the extent that one skilled in the art could have produced the thing claimed as invention by the new applicant, merely by looking at the specification on record in the Patent Office. Smith pointed out, as has been said, that the screen was not essential to the functioning of his tobacco curing process, so there is no invention in his present claim of the same device without the screen. Miller v. Eagle Manufacturing Co., 1894, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121. That use was anticipated in his prior patent.

 It is well settled that an improvement which is merely mechanical in nature does not amount to invention. To be inventive, it is said "the improvement must be 'more than might have been expected of one reasonably skilled in the art.'" General Tire & Rubber Co. v. Fisk Rubber Corp., 6 Cir., 1939, 104 F.2d 740, 743. There are, of course, a great many cases on this mechanical question, some holding that the improvement was merely mechanical and therefore unpatentable, the others holding that there was invention. Each such case must be decided upon its own facts; and the customary rule that the court, upon appeal, will not make an independent determination of its own as to whether or not the improvement is patentable, but will only reverse if there is clear error,[2] seems applicable. While the interpretation of claims is said to be a question of law for the courts,[3] the determination of both the Patent Office and the District Court [4] that the claims, as interpreted, do not show an invention will not be overturned unless "clearly wrong".[5] This question being of a technical nature which

the Patent Office is well equipped to decide, its conclusion as to patentability should not be disturbed if there is a "rational basis" for the decision. Radtke Patents Corp. v. Coe, 1941, 74 App.D.C. 251, 122 F.2d 937.

"* * * patentable novelty or invention calls for something more than the skill of the mechanic." Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 1943, 132 F.2d 812, 815. One need not be skilled to realize that appellant's process might be effective without the screen. In Micon v. Burton-Dixie Corp., 147 F.2d 19, 21, the Court of Appeals for the Seventh Circuit said: "Novelty is negatived by a full description, in the specification of a prior public patent, of the subject covered by an American patent, even though that subject was not covered by any of the claims of the prior patent. Walker on Patents, Deller's Ed., vol. 1, p. 276; Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Minerals Separation North American Corp. v. Magma Copper Co., 280 U.S. 400, 50 S.Ct. 185, 74 L.Ed. 511. * * *"

 Aside from the question of anticipation, we think this case is controlled by Miller v. Eagle Manufacturing Co., supra, which has never been overruled, modified, or even questioned except by a textwriter, one Stringham, and by Richards v. Chase Elevator Co., infra. The Miller case, it is true, was a suit for infringement and dealt with the question of securing two patents for the same invention by claiming different functions or objects in separate (divisional) applications, while the case at bar is concerned with the omission of an element contained in the prior

1. Electric Storage Battery Co. v. Shimadzu, 1939, 307 U.S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071; Minerals Separation North American Corp. v. Magma Copper Co., 1930, 280 U.S. 400, 50 S.Ct. 185, 74 L.Ed. 511; Suczek v. General Motors Corp., 6 Cir., 1942, 132 F.2d 371.

2. Sharp v. Coe, 1941, 75 U.S.App.D.C. 118, 125 F.2d 185; Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449.

3. Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 Cir., 1946, 155 F.2d 746; Solomon v. Renstrom, 8 Cir., 1945, 150 F.2d 805.

4. "The presumption that the Patent Office is right is reenforced, in the present case, by the presumption that the trial court is right." Abbott v. Coe, 71 App. D.C. at page 197, 109 F.2d at page 451.

5. Bullard Co. v. Coe, 1945, 79 U.S.App. D.C. 369, 147 F.2d 568.

patented invention (which is the Richards case). However, the Miller case stands for the general rule, applicable here, that two patents cannot be granted for the same invention, which would be the result of granting appellant's application at bar if removal of the screen causes no substantial or distinct change.

Said the Supreme Court in the Miller case:

"* * * 'It is hardly necessary to remark that a patentee could not include in a subsequent patent any invention embraced or *described* in a prior one, granted to himself, any more than he could an invention embraced or described in a prior patent granted to a third person * * *.' When a patentee anticipates himself, he cannot, in the nature of things, give validity to the second patent. (151 U.S. at page 197, 14 S.Ct. at page 315.)
* * * * * *

"The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, *especially to the same patentee, although the terms of the claims may differ;* that the second patent, although containing a broader claim, more generical in its character, than the specific claims contained in the prior patent, is also void; but that where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained. (Emphasis supplied.)

"In the last class of cases *it must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that covered by the first patent; in other words, it must be something substantially different from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent.* If the case comes within the first or second of the above classes, the second patent is absolutely void." (Emphasis supplied.) 151

U.S. at pages 198-199, 14 S.Ct. at page 315.

And, finally, to the contention that the second was a separate and distinct invention over the first, the Court used the following language which is applicable here:

"* * * The first patent clearly includes the second. * * * The matter sought to be covered by the second patent **is** inseparably involved in the matter embraced in the former patent, and this * * * renders the second patent void.
* * * * * *

"* * * It certainly did not involve patentable novelty to drop or omit from the patent a claim for the depressing action of the spring arrangement which might be effected by any mere mechanical contrivance.

"This view of the case is sustained by the statement in the specification forming a part of the patent of 1881, * * *.
* * * * * *

"To hold, under these circumstances, that the first and second patents * * * present distinct inventions, or that both are valid for the same invention, would involve the drawing of distinctions too refined for the practical administration of the patent law." 151 U.S. at pages 200-202, 14 S.Ct. at page 316.

As has already been pointed out, the present case is concerned with the mere omission of an element which was definitely said by the patentee to be non-essential to the proper functioning of his invention. The Supreme Court dealt with such a situation in Richards v. Chase Elevator Co., 1895, 159 U.S. 477, saying, at pages 485-487, 16 S.Ct. 53, at page 54, 40 L.Ed. 225:

"There is certainly no novelty in the result * * *. Is there any novelty in the method by which this is done? * * * There is clearly no novelty in the individual steps of this transfer. Indeed, the failure to claim either one of the elements separately raises a presumption that no one of them is novel.

"The novelty, then, must be in the combination, which differs from the combina-

tion of a ordinary [grain] elevator only in the omission of the storage feature, by which grain is housed in transit, and its identity lost. While the omission of an element in a combination *may* constitute invention, if the result of the new combination be the same as before; yet if the omission of an element is attended by a corresponding omission of the function performed by that element, there is no invention, *if the elements retained perform the same* function as before. * * * If, for instance, another person should take out a patent for this same combination, with the weighing hopper omitted, such patent would clearly be void, unless another method of weighing were substituted. * * * After all, the invention resolves itself into the omission of the storage feature and a necessary incident thereto.

"*To make a combination of old elements patentable, there must be some new result accomplished, and as the result in this case is a mere aggregation of the several functions of the different elements of the combination, each performing its old function in the old way, we see nothing upon which a claim to invention can be based.* The device is undoubtedly a convenient one, and appears to have proven profitable to the patentee; but * * * it lacks the necessary quality of invention." (Emphasis supplied.)

In the case at bar, no specific function was given in patent No. 2,051,348 to the screen in either the specification or the claim, although it is obvious that its purpose, if used, was to serve as a protection against falling tobacco. But this function was positively ascribed to the baffles over the burners and immediately below the screen. Any useful function which the screen had must be inferred, and it was apparently later definitely decided by the patentee that it served no useful purpose, as he omitted it in his present application. Thus, "the elements retained perform the same function as before" and in using a "combination of old elements", the result is a "mere aggregation of the several functions of the different elements of the combination, each performing its old func-

tion in the old way." There is, therefore, "nothing upon which a claim to invention can be based." Richards v. Chase Elevator Co., supra. Compare McCreary v. Pennsylvania Canal Co., 1891, 141 U.S. 459, at page 467, 12 S.Ct. 40, at page 43, 35 L.Ed. 817, where the Supreme Court said: "* * It is true that the combination of the earlier patent in this case is substantially contained in the later. If it be identical with it, or only a colorable variation from it, the second patent would be void, as a patentee cannot take out two patents for the same invention." Smith's removal of the screen is nothing more than a "colorable variation" from the patent which he already has.

In the case of In re Pein, 1914, 41 App. D.C. 586, this court held that the omission of a certain element (a float) of a patented liquid measuring device, so that the supply and flow of liquid through the connecting pipes was unobstructed, amounted to nothing patentable. Said the court, 41 App. D.C. at p. 589: "* * * But the purpose of these floats is to prevent, by means of locking devices with which they are connected, the turning of the handle carrying the valve in the supply and discharge pipes of the cups, until one of the cups is entirely empty and the other entirely full. *It would require but the exercise of mere mechanical skill to remove these floats. The omission of this element, with a corresponding loss of function, does not amount to invention.*" (Emphasis supplied.) Lack of invention is even more readily seen here than in that case because the screen, by the terms of the prior patent, had no specific function, being merely referred to in the specification as an element which the patentee "may desire" to use.

Eibel Process Co. v. Minnesota & Ontario Paper Co., 1923, 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523, cited by the appellant, is not in point for, in that case, the Supreme Court found that the disputed patent was a substantial improvement, different from the prior art in purpose and degree. But here, the new application cannot accurately be so described. In Sharp v. Coe, 1941, 75 U.S.App.D.C. 118, 123, 125

F.2d 185, 190, we cited the Eibel case in support of the following statement: "* * * If modification of the prior art, even though not great, nevertheless, as the last step taken accomplishes a new and useful result, and solves a problem which has beset the art and achieves commercial success, this, under substantial authority, is strong evidence of invention." This seems to us to be a fair resumé of the Eibel holding showing that it does not affect the determination of this case.

But appellant argues that "an inventor who presents two separate modifications of his invention in two separate co-pending applications may present claims of a scope to be generic to both modifications in either the first or the second patent to issue." And the parties apparently agree that, as between the patent and the application here in issue, the latter contains the generic claims, since they are broader than the claims of the patent. However that may be, Miller v. Eagle Manufacturing Co., supra, seems to answer this problem in saying, 151 U.S. at page 198, 14 S.Ct. at page 315: "* * * no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character than the specific claims contained in the prior patent, is also void; * * *."

The United States Court of Customs and Patent Appeals has followed this view. In the case of In re Barge, 1938, 96 F.2d 314, 316, 25 C.C.P.A., Patents, 1058, where the applicant's claims had been rejected by the Patent Office on grounds of prior art and double patenting, that Court said: "It is well settled that, in instances like that at bar, where an applicant obtains a patent for one invention related to the same general subject matter as is disclosed in a later filed application, like that under consideration here, he is not entitled to two patents if his disclosure in the later application is not inventive over that for which he has already received a patent. The fact that he files his second application before

the issuance of his first patent does not change the situation as long as the second application is not in the nature of a divisional one. * * * If the law were otherwise than as is stated, supra, an applicant could secure the allowance of a patent and then later extend the period of his monopoly by adding uninventive features to the claims and secure a second patent therefor with a later date of issue. It is, therefore, settled law that in cases like the one at bar it is proper to hold the claims of a later filed application unpatentable in view of the prior art *and of the claims of the applicant's issued patent*. In re Isherwood, 46 App.D.C. 507; In re Swan, 46 F.2d 572, 18 C.C.P.A., Patents, 935; In re Slepian, 49 F.2d 835, 18 C.C.P.A., Patents, 1393." (Emphasis supplied.)

Finally, appellant suggests that the defense of double patenting should not defeat the method claim (claim 2) in the present application, since "it is well settled that the prior grant of an apparatus patent will not bar the grant of a method claim in a subsequent application," citing General Tire & Rubber Co. v. Fisk Rubber Corp., 6 Cir., 1939, 104 F.2d 740; and Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 1934, 71 F.2d 539; and that "There can be no double patenting of a method claim unless the earlier granted patent contains a similar *method* claim."

This argument is answered by Kistler v. Coe, 1944, 79 U.S.App.D.C. 36, 142 F.2d 94. In that case Kistler received a patent upon a material known as aerogel. While that application was pending, he filed an application for a patent for method claims for aerogel. This court said:

"* * * In substance, therefore, what appellant seeks to cover with the monopoly of a patent is the method of putting his aerogel into spaces between outer and inner walls * * * for insulating purposes; as well as the buildings and refrigerators so insulated. The Patent Office rejected this ambitious proposal, as did the District Court, for lack of invention. We agree with the Patent Office and with the District Court.

"In response to the finding of the District Court, that the claims here involved defined no invention over appellant's aerogel patent, he concedes that what he claims to be invention, in the present case, is disclosed in the patent issued to him on September 21, 1937. But he urges that the finding does not justify rejection of the disputed claims because he did not *claim* the alleged later invention in his earlier application. Specifically, he says: 'None of the claims [of his patent] are directed to a heat-insulating *structure* or to a *method* of making such structure.' [Italics supplied] But this fact does not entitle appellant to a patent in the present case. *The claims of his earlier application did disclose all that was inventive in character and he received a patent therefor * *.*" (Emphasis supplied in last sentence.)

The Patent Office finding that the claims lacked invention was, in our view, a reasonable one. The District Court was therefore right in dismissing the complaint. Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449; Smith v. Ooms, 1947, 82 U.S. App.D.C. 402, 166 F.2d 211.

Affirmed.