SMITH et al. v. FLORENCE–MAYO
NUWAY CO. et al.

No. 6056.

United States Court of Appeals
Fourth Circuit.

Argued April 12, 1950.

Decided June 2, 1950.

Jesse A. Jones, Kinston, N. C., and W. Brown Morton, New York City (Pennie, Edmonds, Morton & Barrows, New York City, and Frank H. Kennedy, Charlotte, N. C., on brief), for appellants.

J. Hanson Boyden, Washington, D. C. (Bernard F. Garvey, Washington, D. C., and John B. Lewis, Farmville, N. C., on brief), for appellees.

Before PARKER, Chief Judge, SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by plaintiff from a judgment for defendant in a patent infringment suit. The patent is Smith Patent No. 2,051,348 covering a drying house for tobacco; and claims 1, 2 and 7 of that patent are involved in the suit. The District Judge held that these claims were invalid in view of the prior art, but that, even if valid, they were not infringed. We do not find it necessary to pass upon the validity of the claims, since we are of opinion that, when limited, as they must be, in the light of the prior art, they are not infringed by the apparatus and structure of the defendants.

The patent in suit is directed to the curing of tobacco in the conventional type of tobacco barns by the use of oil as a fuel in a number of small, independent, open-flame burners covered by a hood and arranged in series adjacent to the walls of the barn. Patents relating to this art were before this court in the recent cases of Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 168 F.2d 778 and Smith v. General Foundry & Machine Co., 4 Cir., 174 F.2d 147. In the first of these, we held valid and infringed, as against what was in effect a Chinese copy, the Mayo patent which combined with devices old in the art the bringing of air by pipes from outside the barn and delivering it under the hoods or baffle plates of the burners. One of the patents with which we dealt in the prior art was the Smith patent here in suit. That patent along with another patent to Smith was the subject of the suit against the General Foundry & Machine Co., wherein we held that the patent was not infringed by an oil heating device which did not employ a large number of separate units but a central source of heat. The case here presents the question as to whether the first, seventh and second claims of the Smith patent are infringed by the device of the Mayo patent, which we

508

upheld in the first of the cases above cited. Those claims are as follows:

"1. The combination with a drying house including side walls and end walls, of a plurality of spaced independent fuel burning heating units located within the house and arranged in series adjacent the walls thereof, a main fuel supply located exteriorly of the house, a fuel feed pipe located inside the house and connecting all of the units, and a single inlet pipe connecting the main fuel supply and the fuel feed pipe.

"2. The combination with a drying house including side walls and end walls, of a plurality of spaced independent fuel burning heating units located within the house and arranged in series extending substantially around and adjacent the walls thereof, means located above the units for supporting articles to be dried, spaced baffle means interposed between the units and the articles, and a screen interposed between the baffle means and the articles.

"7. The combination with a drying house including side walls and end walls, of a plurality of spaced independent fuel burning heating units located within the house and arranged in series extending substantially around and adjacent the walls thereof, means located above the units for supporting articles to be dried, and spaced baffle means interposed between certain of said heating units and the article supporting means, the baffle means comprising imperforate portions disposed directly above the associated burners and perforated portions disposed at the side of said imperforate portions."

The record in this case clearly shows that there was nothing new in the use of open flame oil burners for heating tobacco barns. Brock Patent No. 1,368,018 discloses as heating means of tobacco barns, long perforated bunsen burner type heaters covered by an adjustable hood. Reynolds Patent No. 1,509,902 shows the use of an open flame burner under a hood. Other prior art patents of which notice should be taken are the Mims Patent No. 1,493,889, showing the use of an open flame oil burner covered by a hood for treating vegetables and Fizer

Patent No. 265,051, showing a number of heaters, but without oil burners, arranged along the walls of a tobacco barn. Account must be taken also of the Torrid Stove installation, which consisted of independent oil burning stoves used for heating purposes in tobacco barns and of the teaching of agricutural department bulletins as to the use of open flame burners in series for the production of gases for the coloring of oranges and grape fruit.

In the light of this prior art it is idle to contend, as does appellee, that the claims in suit should be so broadly construed as to give the patentee a monopoly on the use of open flame burners in the curing of tobacco. The fact is that, in the proceedings in the patent office, the patentee sought broad claims of this character and, after they had been denied on the prior art, accepted the limited claims sued on. He then sought a reissue containing the following broad claim:

"8. The combination of a drying house, of means for heating the same comprising a plurality of independent oil-burning heaters distributed about the floor of said house to generate a plurality of independent rising columns of heated gas, baffles for said heaters overlying the same and shaped to direct rising column of heated gas laterally into the spaces between said heaters, a common fuel supply for a plurality of said heaters, and means for independently regulating the feed of oil from said common supply to the individual burners."

This was denied by the Board of Appeals of the Patent Office, which said:

"According to the present application a plurality of small burners of the oil burning type are uniformly distributed about the floor of the barn. These burners are supplied from a common fuel source, but valves are provided so that each burner can be controlled individually. The products of combustion are deflected sidewise so as to distribute the same evenly throughout the mass of tobacco suspended above the heating means. The gist of appellant's contention apparently resides in the direct use of

the products of combustion for drying tobacco of the type stated.

"Each of the patents to Reynolds, Mims and Brock shows that it is old to use oil burning heaters for this purpose and each of these patents shows means for deflecting the hot gases laterally so as to obtain an even distribution of the same. The patent to Reynolds shows but a single heater for the barn. This is true also of the patent to Mims, but the patent to Fizer shows that it is common where a large barn is involved to use a plurality of small heaters uniformly distributed about the floor space. In addition to this it is a matter of common knowledge that where a comparatively large space is to be heated, normally better results can be obtained by dividing up the heating means into a plurality of small units distributed evenly over the floor space than could be obtained by a single large unit. The patents to Reynolds and Brock each shows a plurality of burners which can be individually controlled. The patent to Brock shows the burners suspended from cross beams instead of by the floor as called for in the claims, but this difference does not appear to be of patentable moment."

■ The application for reissue was abandoned after this denial; and the patentee may not ask this court to give to the limited claims granted him an interpretation which would make them as broad as the claims denied in the abandoned application for reissue. See Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U. S. 477, 492, 55 S.Ct. 455, 79 L.Ed. 1005; Keystone Driller Co. v. Northwest Engineering Corp., 294 U. S. 42, 46, 55 S.Ct. 262, 79 L.Ed. 747; Smith v. Magic City Kennel Club, 282 U. S. 784, 789, 51 S.Ct. 291, 75 L. Ed. 707. Particularly is this true in view of the fact that the patentee, after the abandonment of the reissue, filed a new application for a patent with broader claims and this was denied by the Patent Office and the denial was approved by the courts. Smith v. Ooms, 82 U.S.App.D.C. 402, 166 F.2d 211; Smith v. Kingsland, 85 U.S.App.D.C. 284, 178 F.2d 26. It is not without significance that the District Court, in the case cited, held that the claims in suit there covered the same invention as claim 2 of the patent here in suit and that they showed nothing amounting to invention over Brock, Mims and Reynolds.

■ We do not think it necessary to pass upon the validity of the claims in suit, for, when they are limited, as they must be, by the prior art, they are clearly not infringed by the devices of the defendants. This is perfectly clear as to claim 2, which calls for a screen which defendants do not use; and we think it equally clear as to the other claims. In claim 1, the requirement is that the independent fuel burning units be "arranged in series adjacent the walls" of the tobacco barn; and in claim 7, as in claim 2, there is a requirement that the heating units be "arranged in series extending substantially around and adjacent the walls". The reason for this limitation was probably that in the structure of the patent it was important to have the burners adjacent the walls so as to be near the air inlets provided in the walls. At all events, in urging reconsideration of the claim which eventually became claim 2 of the patent, and which had been rejected over the prior art, the patentee amended the claim to insert this very limitation. He said (see p. 30 of Exhibit 17):

"Reconsideration of claim 7 as amended is requested. This claim has been amended in order to specify the spaced fuel burning heating units arranged in series extending substantially around and adjacent the walls of the house. Assuming that it would be obvious to substitute the heaters and baffles of Gehnrich for those of Dieckmann, which is not admitted to be so, the resulting mosaic would not meet the claim as amended, because Dieckmann's single burner is located substantially in the middle of the cabinet. Any burner structure substituted for that of Dieckmann would be located similarly and would not extend substantially around and adjacent the walls."

The burners of the alleged infringing devices do not extend substantially around or adjacent to the walls of the barn in any fair sense in which that language could

be used, but the series of heating units are placed out from the walls and towards the center of the barn. Location adjacent to the air inlets in the walls is not important in the Mayo structure because the outside air is brought to the burners by pipes. Whatever the reason, however, it is clear that the structure of the alleged infringing devices does not infringe the claims of the patent, limited as they are to burners adjacent to the walls.

Since the Florence-Mayo Nuway Co. is a party to this suit, we think it not inappropriate to say that, in the light of the record here, the Mayo patent is not entitled to the liberal treatment of a pioneer patent, as indicated by our opinion in 168 F.2d 778, but like the Smith patent here should be treated as a mere improvement patent in a crowded field with a very narrow range of equivalents. The majority of the court does not question the correctness of the decision holding the patent valid and infringed against the device of Hardy, which was a mere Chinese copy; but the evidence in the record before us shows clearly that the Mayo patent was not a pioneer patent and was not the first to achieve commercial success in the heating of tobacco barns with open flame oil burners, as we were then led to believe. Its monopoly is limited, therefore, just as is the monopoly of the Smith patent, to the exact combination which it discloses. Smith and Mayo seem to be in consimili casu in the light of the record in this case; and we feel that this should be made clear, so that no advantage may be taken of the fact that the court was misled by the undisputed evidence in the record in the former case into believing that Mayo was the first to solve the problem presented and the first to achieve commercial success. The evidence in the present case shows that up to the trial 14,350 of the Smith devices had been sold for $2,252,500.

On the ground that no infringement of the patent has been shown, the judgment of the court below will be

Affirmed.