SMITH INDUSTRIES INTERNA-
TIONAL, Appellant,

v.

HUGHES TOOL COMPANY, Appellee.

No. 24787.

United States Court of Appeals
Fifth Circuit.

June 10, 1968.

Charles L. Tighe, Midland, Tex., William D. Harris, Jr., V. Bryan Medlock, Jr., Richards, Harris & Hubbard, Dallas, Tex., Stubbeman, McRae, Sealy & Laughlin, Midland, Tex., for appellant, Smith Industries International; Wynne, Jaffe & Tinsley, Dallas, Tex., of counsel.

Edward A. Haight, Britton A. Davis, Chicago, Ill., Robert F. Campbell, Houston, Tex., Elton Gilliland, Shafer, Gilliland, Davis, Bunton & McCollum, Odessa, Tex., Andrews, Kurth, Campbell & Jones, Houston, Tex., Haight, Simmons & Hofeldt, Chicago, Ill., for appellee, Hughes Tool Co.

Before RIVES, GEWIN and THORNBERRY, Circuit Judges.

RIVES, Circuit Judge:

This infringement suit by appellee Hughes against appellant Smith presents the usual questions: Is Hughes' patent No. 3,075,781 [1] valid and, if so, did Smith infringe that patent? The patent relates to a bearing seal or face seal adapted to seal between two relatively rotatable surfaces to retain lubricant within a bearing and to exclude foreign material. Its particular utility is in the environment of a bit used in drilling oil wells.

The seal is circular or ring shaped and comprises a metal spring or core covered by an impervious material such as rubber. The metal spring is of the type called a "Belleville" spring in the sealing art. It is shaped like an inverted saucer with the bottom removed, and is referred to as a frusto-conical shape since it resembles a cone with the top cut off. Two forms of cores are described, one having slots shaped like keyholes which pass through the metal, and the other being corrugated. The seal effected is between a shaft and a member which rotates about the shaft. Bearings facilitate the

1. Application filed February 10, 1958, patent issued January 29, 1963. The patent will usually be referred to as the 781 patent.

rotation of the member, which, in the case of a drill bit, is a cone provided with teeth or abrasives for boring through earth, rock and other formations. As has been said, the seal operates to retain the lubricant around the bearings and to prevent its contamination by drilling mud, cuttings or other foreign material.

The specification explains that the seal is perferably mounted around a shaft so that there is a slight clearance between the inside of the seal and the shaft.[2] Alternatively, the inner diameter of the seal may be provided with a bead of rubber which contacts the surface of the shaft.[3]

■ The patent contains ten claims and the district court did not identify the particular claims held infringed.[4] Of course, separate claims in the same patent are independent inventions.[5] Smith does not disagree with Hughes' designation in brief of the claims which it insists are infringed as claims 1, 2, 3, 8, 9 and 10. Hence our opinion and decision will be confined to those claims. We think that, for an adequate understanding of the patent, only one claim need be quoted.

"1. In a machine having a support member, a shaft extending transversely thereof, and a relatively rotatable member mounted on such shaft, there being opposed, generally radially extending annular surfaces on such members, an annular seal ring *radially floatingly surrounding said shaft* and generally coaxial therewith, said seal ring in relaxed position having the general form of a frusto-conical shell having a wall of elongated length in comparison with both its thickness and its axial height and being axially elastically flattenable to reduce such height, said seal ring having a pair of axially facing, radially spaced annular surfaces at its inner and outer peripheral portions, said surfaces facing in opposite directions and *each in sliding and sealing engagement with one of the annular surfaces of said members,* such engagement resulting from a partial flattening of said seal ring between and by the annular surfaces of said members." (Emphasis added.)

The decision of this case, especially on the question of infringement, turns largely on the expressions which we have italicized. Such expressions are contained in each of the claims which Hughes insists are infringed.

After an extensive hearing, the district court entered full findings of fact and conclusions of law and held the plaintiff Hughes entitled to an injunction against further infringement and to an accounting of its damages.[6]

■ Patentability is dependent upon three explicit conditions: novelty and utility as defined in 35 U.S.C. §§ 101 and 102, and nonobviousness as set out in § 103. See Graham v. John Deere Co., 1965, 383 U.S. 1, 12, 86 S.Ct. 684, 15 L.Ed.2d 545. Smith does not question the novelty and utility of the 781 patent, but claims that it does not meet the obviousness test of § 103:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in language and scope of one or more claims of the patent, appropriate the invention as defined in the claims, and are an infringement of the patent."

2. "Preferably the inner periphery 23 of the seal ring 21 is of such diameter that there is slight clearance between the ring and the periphery 24 of the shaft 4, as clearly seen in FIG. 2."

3. "Radial floating action of the ring 21 is maintained in the structure shown in FIG. 5 wherein the encasing material provides a bead 23' at the inner periphery of the ring, such bead extending radially inwardly and contacting the surface 24."

4. Referring to Smith's seals, the district court found: "Such seals fall within the

5. Leeds & Catlin v. Victor Talking Machine Co., 1909, 213 U.S. 301, 319, 29 S.Ct. 495, 53 L.Ed. 805.

6. We are requesting Judge Guinn to have his findings of fact and conclusions of law published. See D.C., 284 F.Supp. 908.

section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

In the *Graham* case, supra, the Supreme Court said:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. See Note, Subtests of 'Nonobviousness': A Nontechnical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169 (1964)." 383 U.S. at 17–18, 86 S.Ct. at 694.

The principal, practically the sole, prior art reference relied on by Smith on appeal is Curtis Patent No. 2,560,577, issued July 17, 1951, for an "end face oil and dirt seal." The district court devoted several pages of its findings to a discussion of the Curtis Patent, ultimately concluding:

"The sealing device there described does not appear to have been intended for use in a rock bit. As shown in the Curtis patent, it does not meet the restrictive space limitations of such a bit. Further, Curtis' seal does not have, or claim to have, the flattenabil-

ity and elasticity capabilities which Atkinson [the 781 patent] teaches, and which are necessary under the conditions peculiar to the operation of a rock bit as described in the above findings. As in the case of the other prior art patents, the Curtis patent did not teach those attempting to develop a rock bit seal how to accomplish it."

We agree. Instead of a frusto-conically shaped and elastically flattenable seal, the core of the Curtis seal has spaced yielding fingers bound at both inner and outer diameters of the seal by "relatively rigid, continuous ring shaped flanges." The claims describe those flanges as designed "to stiffen and reinforce the latter [the sealing rings] against radial deflection." The specification describes the sealing element as possessing "radial stiffness and rigidity to maintain its exact circular form at the sealing face." The Curtis Core is neither flattenable nor elastic to a degree even approaching that meant for use in a rock bit.

The Curtis patent was not among the references cited in the file of the 781 patent. We think the Patent Office reference to the French Patent 1,132,266 was more apt than Curtis, but we agree with the district court that none of the prior art patents would have made obvious the development of an effective seal for use in a bit used in drilling oil wells.

■ Any doubt on that score is removed when we consider the long and unsuccessful efforts of others to solve the problem, the long-felt need in the oil-drilling field for such a device, and the wide commercial success [7] of Hughes with its 781 patent. These considerations are developed at length in the findings of the district court and need not be here repeated. As so well observed in the *Graham* case,

"These legal inferences or subtests do focus attention on economic and motivational rather than technical issues

---

7. Commercial success is subject to the inquiry, hereafter discussed when we reach infringement, as to whether Hughes' seals

as commercially manufactured and sold actually follow its 781 patent.

and are, therefore, more susceptible of judicial treatment than are the highly technical facts often present in patent litigation. See Judge Learned Hand in Reiner v. I. Leon Co., 285 F.2d 501, 504 (2 Cir. 1960). See also Note, Subtests of 'Nonobviousness': A Nontechnical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169 (1964). Such inquiries may lend a helping hand to the judiciary which, as Mr. Justice Frankfurter observed, is most ill-fitted to discharge the technological duties cast upon it by patent legislation. Marconi Wireless Telegraph Co., etc. v. United States, 320 U.S. 1, 60 [63 S.Ct. 1393, 87 L.Ed. 1731] (1943). They may also serve to 'guard against slipping into use of hindsight,' Monroe Auto Equipment Co. v. Heckethorn Mfg. & Sup. Co., 332 F.2d 406, 412 (6 Cir. 1964), and to resist the temptation to read into the prior art the teachings of the invention in issue." 383 U.S. at 35–36, 86 S.Ct. at 703.

The Curtis patent was issued some seven years before the application for the 781 patent was filed. During that period may persons skilled in the art were seeking a solution to the problem and actually Curtis did not make that solution obvious.

■ We, therefore, agree with the district court that claims 1, 2, 3, 8, 9 and 10 of Patent 3,075,781 are valid.

A closer question is presented as to whether Smith infringed the 781 patent. On this question the district court's findings included the following:

"Defendant's attempt to develop a seal continued through 1959. During this period, defendant was conscious of the testing being carried on by Hughes Tool, but was unable to learn the exact structure of its seal. Then, in January of 1960, Hughes Tool introduced its new sealed bearing bits to the market, and the first commercial deliveries were made. Within a short time, one of defendant's field personnel was able to obtain a piece of a seal from a used Hughes bit which had run in an actual well drilling operation. The piece was forwarded to Smith's development engineers where it was photographed and analyzed. Within a few months, Smith had completed its copy of the Hughes development, and was field testing the seals in its own bits. The accused bits of defendant, which were commercially introduced in 1961, employ a seal which is virtually identical to the Hughes patented seal."

Those findings are unquestionably correct if Hughes' seals, as manufactured and distributed commercially, follow its 781 patent. After the application for the patent had been filed, Hughes found, as a result of extensive field testing, that a seal ring which fit loosely on the shaft would not work satisfactorily. Notice of allowance of the patent was mailed on September 10, 1962. Thereafter on November 5, 1962, the applicants filed a notice of amendment under Patent Office Rule 312. That amendment undertook to strike from the claims such words as "radially floatingly" and "sliding and." [8]

In submitting the amendment, the attorney for the applicants included the following remarks:

"1) The amendment is needed because Applicants and their assignee-employer have been manufacturing and marketing assemblies and seal rings in accordance with the amended claims, i. e., with the seal ring fitted interferingly on the shaft or bearing pin of a rock bit. As all 10 of the allowed claims presently contain limitations negating such interference fit, they would not protect all structures actually being manufactured."

The Examiner declined to recommend the proposed amendment, stating: "The entry of the proposed amendment of November 5, 1962 under Rule 312 is not recommended because more than a cursory review of the record is necessary. The claims if amended as proposed would not obviously be allowable since material limitations would be eliminated." Accord-

---

8. See the words italicized in claim 1 as copied supra.

ingly, the Commissioner disapproved the amendment under Rule 312.

The district court found:

"When the amendment was denied, for procedural reasons, the inventors filed a separate application for a patent on this feature and, as a result, U. S. Patent No. 3,199,878 was issued. The aforesaid amendment and subsequent patent were prompted by the manufacture and use by Hughes in 1962 of a small number of sealed bearing bits in which the seals were fixed to the shaft by an adhesive cement, and in which rotation of the seal was prevented. Although this type of arrangement was thought to have utility in certain drilling applications, it has not been incorporated in Hughes' primary commercial bits. Plaintiff has advised defendant that it does not and will not charge infringement of the subsequent patent No. 3,199,878."

Those findings are amply supported by evidence including the testimony of the patent attorney and the interoffice communications.

Hughes' counsel points out that the proposed amendment, after the claims were allowed, played no part in the grant of the patent and cannot work an estoppel with respect to infringement.[9] Smith's counsel responds that the remarks accompanying the proposed amendment would at least have the standing of admissions.[10] We agree that proceedings had after allowance of claims may constitute admissions, but here the admissions go no further than that the allowed claims contain limitations negating an "interference fit" so tight as to anchor the seal to the shaft and prevent it from independent rotation. It does not cover the other type of

"interference fit," where the inner diameter of the seal is smaller than the outer diameter of the shaft, with some independent rotation of the seal possible.

Similarly, the file wrapper discloses that applicants' attorney used the phrase "interference fit" in distinguishing the French patent: "Expressed in other words, the French seal member is interferingly fitted in a groove on the shaft, and rotates with the shaft. Applicants make use of no groove and no interference fit." The ambiguous phrase "interference fit" does not appear in the 781 patent. On the two occasions in which applicants' attorney used that phrase, when considered in context, we think that it refers to the type of fit which anchors a seal to a shaft and prevents independent rotation.

The claims of the 781 patent are more clear and unambiguous when they employ such phrases as "radially floatingly surrounding said shaft" and "each in sliding and sealing engagement." The meaning of "radially floatingly surrounding" is made clearer by the patent specification:

"By way of supplementation, we refer to the fact that it is desirable that the seal ring be so constructed and arranged within the space provided therefor that it have limited floating action within such space. That is to say, the seal ring is not anchored to either the cutter 7 or the leg 3 and may therefore move radially to a limited extent as it functions to maintain a continuous sealing contact between the annular ridges or beads 34 and 35 and the opposed surfaces 28 and 22 on the cutter and the bit leg."

We agree with the district court that the issue of rotation of the seals with re-

---

9. Citing, United States Pipe & Fdry. Co. v. James B. Clow & Sons, Inc., N.D.Ala. 1962, 205 F.Supp. 140, 151, aff'd in part, 5th Cir. 1963, 313 F.2d 46; Up-Right, Inc. v. Safeway Products, Inc., 5th Cir. 1963, 315 F.2d 23, 27; Hunt Tool Co. v. Lawrence, 5th Cir. 1957, 242 F.2d 347, 353–354; Catalin Corp. of America v. Catalazuli Mfg. Co., 2nd Cir. 1935, 79 F.

2d 593, 597; General Electric Co. v. P. R. Mallory & Co., 2nd Cir. 1924, 298 F. 579, 585–586.

10. Citing, Smith v. Florence-Mayo Nuway Co., 4th Cir. 1950, 182 F.2d 507; J. R. Clark Co. v. Murray Metal Products Co., S.D.Tex.1953, 114 F.Supp. 224, 229, modified, 5th Cir. 1955, 219 F.2d 313.

spect to the shaft during operation of the bit is critical on the question of infringement. The court found "on the preponderance of the evidence, that the commercial seals of defendant rotate with respect to the shaft during operation, and that such seals constitute an infringement of the Atkinson et al. patent." The court further found:

"The court finds, on the basis of the evidence recited above, that the seals employed in the accused seal bearing bits of defendant have the same structure as that described or claimed in the Atkinson et al. patent [the 781 patent], and are mounted in the bits so as to be radially floating and in sliding and sealing engagement with each of the annular sealing surfaces of the bit leg and conical cutter. They perform the same function, in the same way and accomplish the same result as the seal of the Atkinson et al. patent."

We agree with those findings and with the other findings and conclusions of the district court, and affirm its holding that claims 1, 2, 3, 8, 9 and 10 of Hughes' patent No. 3,075,781 are valid and that Smith has infringed those claims.

Affirmed.